ELIAS BROWN *et al.*

*v.*

KATIE HOLZMAN.

*Filed at Ottawa May 15, 1895—Rehearing denied October 16, 1895.*

1. APPEALS AND ERRORS—*reversing finding of fact as to forgery of deed.* The finding that a lost deed of a husband and wife was a forgery will be reversed, on appeal, where the only affirmative evidence to support it is that of the surviving husband, and he, on several occasions, recognized and stated that the deed was valid, received a part of the consideration upon a subsequent conveyance by the grantee, and was otherwise contradicted.

2. TRUST—*innocent purchaser of trust property protected.* A purchaser from a grantee whose title is held in trust for another is not affected by the improper disposition of the property or the proceeds resulting from the sale by his vendor, where he has no notice of the existence of such trust or of facts putting him upon inquiry.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding.

M. SALOMON, for plaintiffs in error:

Holzman was estopped by his agreement to convey the property to Brown, by his conduct, and by his answer to the original bill, from testifying in derogation of the title. *Boggs* v. *Olcott,* 40 Ill. 303; Greenleaf on Evidence, (14th ed.) secs. 22, 207; Taylor on Evidence, 718; 7 Am. & Eng. Ency. of Law, 18-21; *Goodal* v. *Bates,* 14 R. I. 65; *Midland* v. *Hitchcock,* 37 N. J. Eq. 549; *Anderson* v. *Armstead,* 69 Ill. 452; *Wade* v. *Bunn,* 84 id. 117; *Curyea* v. *Berry,* 84 id. 600; *Stewart* v. *Munford,* 91 id. 58.

J. M. YOUNG, and WOOLFOLK & BROWNING, for defendant in error:

It is well settled that where a matter of fact, depending upon conflicting evidence and the credibility of witnesses, has been decided by a master upon oral testimony, his decision will not be interfered with on his mere judgment of facts, unless it is a very plain case of mistake or error. *Izard* v. *Bodine,* 9 N. J. Eq. 309; *Adams* v. *Brown,*

7 Cush. 220; *McKinney* v. *Pierce*, 5 Ind. 422; 14 Am. & Eng. Ency. of Law, 939-941; *Johnson* v. *Johnson*, 125 Ill. 511; *Peabody* v. *Kendall*, 145 id. 530; *Morney* v. *Morney*, 50 Ill. App. 295; *Kusch* v. *Kusch*, 143 Ill. 353.

When testimony before a master is conflicting and his findings have been approved by the court below, the Supreme Court will not reverse although the merits may appear contrary to the findings. *Sproulls' Appeal*, 71 Pa. St. 137; *Tilgman* v. *Proctor*, 125 U. S. 136.

Under the decisions of this State, following the general current of authority, the pretended deed of Olga and Lipman Holzman to Sallie Behrend being a forgery, no rights could be acquired thereunder, and the record thereof imports no notice of title. *DeWolf* v. *Haydn*, 24 Ill. 526; *Pry* v. *Pry*, 109 id. 466; *Pensonneau* v. *Bleakly*, 14 id. 15; *Chandler* v. *White*, 84 id. 435; *Baird* v. *Jackson*, 98 id. 78; *Buckman* v. *Dicker*, 8 C. E. Green, 283; *Van Amringe* v. *Morton*, 4 Whart. 382; *Arrison* v. *Harmstead*, 2 Burr. 191.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

This is a bill filed by Katie Holzman, a minor, by her next friend, to set aside the following deeds, towit: a deed, dated May 13, 1890, alleged to have been executed by Lipman Holzman and Olga Holzman, the father and mother of complainant, both of Chicago in Cook county to Sallie Behrend of the same place, conveying lot 7, etc., known as No. 259 West Fourteenth street in Chicago, and lot 8, etc., known as No. 75 Liberty street in said city; a deed, dated August 20, 1890, executed by Sallie Behrend (unmarried) to Elias Brown of said city, conveying said lot 7; a deed, dated February 6, 1891, executed by Sallie Behrend to Celie Holzman of said city, conveying said lot 8. After answers were filed as hereinafter stated, the cause was referred to a master in chancery, who took evidence and made a report, finding that the deed to Sallie Behrend was a forgery. The circuit court confirmed the

report of the master, and entered a decree setting the deeds aside. The present writ of error is sued out for the purpose of reviewing said decree.

On February 27, 1889, one Charles A. Kessell, in consideration of $2250.00, conveyed said lot 7 to Olga Holzman, the wife of Lipman Holzman. At this time there was a frame cottage upon the lot, which Lipman Holzman moved to the rear; and he subsequently erected a brick building thereon. On April 17, 1889, Lipman and Olga Holzman executed a trust deed upon lot 7 to Francis B. Peabody to secure $5000.00. Shortly after the conveyance of lot 7 to Olga Holzman, there was also conveyed to her said lot 8. On May 6, 1890, she executed a trust deed upon said lot 8 to one Peter Popp to secure $500.00, which trust deed appears to have covered lot 7 also, as well as lot 8. Theretofore on June 27, 1889, she had executed a trust deed upon said lot 8 to said Popp to secure $2000.00. The two incumbrances for $500.00 and $2000.00 represented money borrowed of two building and loan associations for the purpose of improving lot 8. The agent and representative of these associations, who made these loans, was the plaintiff in error, Bernhard Behrend, the father of Sallie Behrend.

On May 13, 1890, when the deed of lots 7 and 8 is claimed to have been made by Lipman and Olga Holzman to Sallie Behrend, the legal title was in Mrs. Holzman, subject to the incumbrances above mentioned. Mrs. Holzman died on July 28, 1890, having received such severe burns from the accidental explosion of a gasoline stove that she lost her life. The deed to Sallie Behrend, who acted as clerk for her father Bernhard Behrend in his office, he being a real estate and loan agent, purports, as is shown by the record of it, to have been acknowledged by Lipman and Olga Holzman before the said Bernhard Behrend on the day of its date, but was not recorded in the recorder's office of Cook county until July 30, 1890, two days after the death of Mrs. Holzman. Lipman and

Olga Holzman were born in Poland, were illiterate persons, and spoke English very imperfectly, if at all. They could not write and made their marks in signing their names. The original of the deed to Sallie Behrend had been lost and was not produced on the hearing, but it purports upon the record to have been signed by the marks of the grantors.

Mrs. Holzman died intestate leaving her husband, the said Lipman, and six minor children including complainant. The plaintiff in error, Elias Brown, came to Chicago on July 14, 1890, from New York City where he had lived for many years. It appears that he also was a foreigner, as he does not seem to have understood the English language very well. He was at that time seventy years old and in delicate health. He had $5000.00 in money. He staid a few days with his son-in-law, Abraham Levy, who lived on the second floor of the building at 259 West Fourteenth street, being a tenant of the Holzmans, and then leaving there, went to live with his son, Ascher Brown, who lived in the neighborhood. Lipman Holzman had been trying to sell lot 7 for some time before Elias Brown came to Chicago. Ascher Brown and Levy had talked with him about it, and, after Elias Brown came, the latter had some negotiations with him and with his wife about buying the property, but no agreement was reached as to the price. After the death of Mrs. Holzman and on August 20, 1890, a written contract was entered into between Lipman Holzman and Elias Brown, one of the plaintiffs in error here, by which the former agreed to sell to the latter lot 7 for $8500.00, of which $3500.00 was to be paid in cash and the balance by assuming the payment of the mortgage for $5000.00.

In a few days the abstract of title was completed and submitted for examination to Mr. Surine, Brown's lawyer, who pronounced the title good in Sallie Behrend. Thereupon a deed was executed by Sallie Behrend to Elias Brown, conveying lot 7 to the latter subject to the

incumbrance for $5000.00; and a release deed of the mortgage for $500.00, releasing lot 7 from the lien thereof, was also executed. Holzman and Bernhard Behrend went together to the office of Brown's lawyer, and there met the latter and Brown. Up to this time Brown had never seen Bernhard Behrend or his daughter, and knew nothing about the title. Brown had previously paid $100.00 of the $3500.00 when the contract was made. At the meeting in question, a portion of the $3400.00 was applied to the payment of the interest then due on the mortgage for $5000.00 and to the payment of some taxes and insurance on the property, and Brown gave his check for the balance, $3116.16, payable to the order of Bernhard Behrend, who acted for Lipman Holzman in that transaction, and had acted for him in previous transactions. The deed to Brown was dated back as of August 20, 1890, the date of the contract, and was recorded on August 26, 1890. A few days after the delivery of the deed and the payment of the money, Lipman Holzman went with Brown to the premises, and delivered the possession of the buildings to him, and introduced him to the tenants as owner, and shortly thereafter moved out. Brown has been in possession ever since, occupying one of the buildings upon the premises, and renting the other.

The sum of $3116.16 was deposited by Behrend in his own name, and subsequently some trouble seems to have taken place between him and Holzman in reference to the money, Holzman demanding its payment, and Behrend delaying the payment. It would appear, that small amounts had been paid to Holzman from time to time, and finally an arrangement was made as to the balance on February 6, 1891. On that day Sallie Behrend conveyed lot 8, being 75 Liberty street, to Celie Holzman, a second wife of Lipman Holzman whom he had married in about six weeks after the death of his first wife. Lot 8 was thus conveyed to Celie Holzman free of incumbrance, Behrend having paid off the two trust deeds for $2000.00

and $500.00 out of the money received from Brown. Subsequently on April 26, 1891, Lipman and Celie Holzman executed a trust deed upon lot 8 to Sigmund Zeisler to secure a loan of $2600.00.

The plaintiffs in error in this case are Elias Brown and Bernhard Behrend. The controversy relates chiefly to lot 7 which was sold to Brown, although the decree of the circuit court, in holding the deed of May 13, 1890, to be a forgery, strikes at the title to lot 8 as well as to lot 7.

It is claimed by the defendant in error, that Olga Holzman never executed the deed to Sallie Behrend; that Olga Holzman was the owner of the lots in her lifetime and owned them at the time of her death, and that her minor children are now the owners thereof as her heirs. On the other hand, it is claimed, on the part of the plaintiffs in error, that the deed from Olga Holzman and her husband to Sallie Behrend was a genuine deed, duly executed and delivered by the grantors therein on the day of its date; that Elias Brown was a purchaser in good faith, holding under that deed; that he paid $3500.00 in money and assumed an incumbrance of $5000.00 without any notice of any defects in the title, and, since he has been in possession, has expended between $1200.00 and $1500.00 in improving the property.

The questions involved are, for the most part, mere questions of fact. The first is: was the deed to Sallie Behrend a forgery? It was not until the amended bill was filed that any charge of forgery was made. In the original bill filed on March 24, 1892, and being under oath, the complainant below alleged, that her mother was illiterate and unable to write her own name or to read the English language, and had been fraudulently induced by her husband and by Bernhard Behrend and his daughter and Elias Brown and others to make said deed upon the representation, that she was thereby providing for the support of her minor children in the event of her death; that on her death-bed said Olga Holzman had declared

to the complainant, that she had made deeds and provided for her children. The original bill, which was read over to the complainant before she signed and swore to it, proceeded upon the theory that Olga Holzman made the deed relying upon the false representations made to her. But in the amended bill filed on November 11, 1892, complainant shifted her ground, and alleged that, on July 29, 1890, after the death of her mother, Bernhard Behrend, under the fraudulent pretext that he would fix the title to the land so as to enable her father to dispose of the same, and co-operating with her father to that end, prepared a bogus deed, purporting to be signed by her father and mother on May 13, 1890, thereby conveying said property for a pretended consideration of $10,000.00 to Sallie Behrend, and falsely and fraudulently wrote the names and forged the marks of her father and mother, and himself witnessed and acknowledged said deed, and filed it for record on July 30, 1890.

The only affirmative evidence to support the charge of forgery is that of Lipman Holzman, who simply states, that he and his wife never made a deed to Sallie Behrend. The reliability of his testimony is seriously shaken by a number of circumstances. His statements upon the subject have varied with the variations in the pleadings of his daughter, the complainant. In an answer filed by him to the original bill he stated, that he bought the property from Kessell with money loaned to him by Bernhard Behrend; that he and his wife, "by warranty deed dated May 13, 1890, recorded July 30, 1890, in book 3186, on page 30, conveyed said lot 7, with other property, to Sallie Behrend for the stated consideration of $10,000, which deed was duly acknowledged by the grantors on May 13, 1890, before Bernhard Behrend, notary public in and for said county of Cook; that said Olga Holzman knew the purport of said deed, and joined therein of her free will and accord, and that in the making of said deed no wrong or fraud was practiced on said Olga Holzman,

and she fully knew the reason and purpose of said conveyance to Sallie Behrend aforesaid."

Mr. Adolph Moses, an attorney at law, swears, that he drew the answer of Lipman Holzman to the original bill and had an interview with him before doing so, towit: on March 9, 1892; that he took memoranda of the interview; that that interview was the one upon which the answer to the original bill was based; that Holzman did not then mention anything about the deed being a forgery; that he said that Brown was innocent; that "the answer was based upon the statements he made to me" (Moses).

Mr. Sigmund Zeisler, also an attorney at law, swears that in April, 1891, he examined the title to the property in question, and, while doing so, called Lipman Holzman's attention to the lapse of time between the date of the deed made by him and his wife to Sallie Behrend, and the date of the recording of the same, "and asked said Holzman if said record was made after the death of his wife Olga, and said Holzman replied that it was. Affiant then asked said Lipman Holzman if said deed to Sallie Behrend was in fact executed and delivered before the death of said Olga Holzman, and said Lipman Holzman replied that it was so executed and delivered by them before her, said Olga's, death."

Bernhard Behrend swore, that he had been in the real estate business for ten years and loaned his own money and the money of others on real estate security; that he had known Lipman Holzman since 1885; that said Lipman was a tailor, but also engaged in real estate operations; that he (Behrend) had advised him in his purchases and sales of lots, and had procured loans for him from building societies; that Holzman took the title to lot 7 in his wife's name because he owed debts, but that the purchase money was his own, earned in buying and selling real estate; that he (Behrend) acted for him when he bought the West Fourteenth street property, and pro-

cured for him from building associations the two loans of $2000.00 and $500.00 secured by the trust deeds to Popp; that he had all the deeds of Holzman to his property in his safe in his office; that, several months before the death of his wife, Holzman had been talking about selling lot 7; that the property on Liberty street was a wretched looking place, and, as he (Behrend) was responsible to the building associations for the loans of $2500.00 and there was a first mortgage of $5000.00 on lot 7, he wanted more security and requested Holzman and his wife to deed the lots to him as additional security; that he told them they could collect the rents and, when they made a sale, he would deed to the purchaser; that they came to his office one evening, and, as to what took place, Behrend swears as follows: "I drew the deed in their presence, and they signed the warranty deed to my daughter for both properties, which was acknowledged before me; * * * I drew the deed and delivered it to them to sign and they came up and signed the deed; she made her mark. * * * I acknowledged and delivered the deed to my daughter. * * * I told Holzman I would hold the deed, would put it on record, * * * would attend to everything. I gave the deed to my daughter and she put it in the safe with other deeds, and I didn't think of it any more, and let it lay for some time until I recorded it with others. * * * Lipman and Olga Holzman signed the deed of May 13, 1890, by making their mark, and I wrote their names on each side of their mark. * * * I claimed to be the owner of the property until the indebtedness of $2500.00 was paid; it was taken as security. * * * I didn't consider the security enough, that is why I took the deed; having the title to the property I could take care of the Peabody mortgage if necessary; I would not have paid off the Peabody mortgage unless I had title * * * when I simply held a second mortgage."

In addition to this testimony the conduct of Lipman Holzman was such as to endorse the deed to Sallie Behr-

end and recognize its validity.    He was present when the
deed from Sallie Behrend to Brown was delivered to the
latter, and permitted Brown to pay over $3500.00 of his
money in reliance upon a title obtained through that
deed.    When he and Behrend and Brown were present in
the office of Surine, Brown's lawyer, he heard Behrend's
explanation of the fact, that the title was in Sallie Behr-
end, as that explanation was there made to the satisfac-
tion of Surine.    He gave no information at that time as
to any forgery of the deed.    On the contrary, he allowed
such of Brown's money as was not paid directly into his
own hands to be used by Behrend in paying off the mort-
gages upon lot 8, and allowed his wife, Celie, to receive
a deed of lot 8 free of incumbrances from Sallie Behrend,
thereby again receiving a benefit from that deed and rec-
ognizing the validity of a title acquired under it.    It was
not until after he and his wife, Celie, had procured $2600.00
by mortgaging the title, acquired through that deed, to
Zeisler, that his daughter, the present defendant in error,
filed an amended bill charging forgery, and he came for-
ward to support the charge by testimony wholly incon-
sistent with his previous statements and conduct.

In saying that the deed in question was a forgery,
Lipman Holzman is contradicted by Bernhard Behrend;
is shown to have made admissions to Moses and Zeisler
to the effect that the deed was genuine and not a forgery,
and has permitted it to be used as a means of obtaining
money and property for himself and his second wife.
In view of these considerations, we are unable to concur
with the conclusion reached by the circuit court upon this
subject.    The issue made by the amended bill and the
answers thereto was upon the question whether the deed
was a forgery or not, and we are of the opinion that the
deed was not a forgery.

There is, however, a second question suggested by the
findings of the decree, and that is whether Brown can be
regarded as having bought the property with notice of

any such facts, as should postpone his rights to those of the complainant and her brothers and sisters. It is undoubtedly true, that Olga Holzman held the legal title to lot 7 when the deed was made to Sallie Behrend. But whether the property was hers, or whether it belonged to her husband she holding the title for him, is a matter about which there is conflicting testimony, some witnesses mentioning circumstances tending to show that the wife regarded herself as owner, and others testifying to ownership by the husband. But whatever may be the fact in this regard, Mrs. Holzman united with her husband in putting the title in Sallie Behrend as security for the indebtedness of her husband, and with authority to Sallie Behrend to make a conveyance of the title upon a sale of the property; and, while some of the proof tends to show that Brown or his son or son-in-law talked on one or more occasions with Mrs. Holzman, as well as with her husband, about the purchase of the property, yet we do not think that Brown had any such notice, or was put upon inquiry in any such way, as to require him to lose his money which was invested in good faith in the purchase of this property. If Sallie Behrend held the title in trust to any extent for Mrs. Holzman in the lifetime of the latter, or for the children of Mrs. Holzman after her death, Brown had no notice of that fact. Whether or not Bernhard Behrend and his daughter, and Lipman Holzman, or either or any of them, improperly disposed of property, or of proceeds resulting from the sale of property, belonging to these children, is a matter which does not affect the plaintiff in error, Brown, and with which he has no concern. He should be protected in his purchase.

The decree of the circuit court is reversed and the cause is remanded to that court with directions to dismiss the bill as to the plaintiff in error, Elias Brown, but with leave to the complainant to amend her bill, if she shall so desire, and to proceed otherwise as she may be advised.            *Reversed and remanded.*