(No. 21053

Albert J. Vetesnik *et al.* Plaintiffs in Error, *vs.* Ernst Magull, *et al.* Defendants in Error.

*Opinion filed February 19, 1932—Rehearing denied April 8, 1932.*

CHARLES A. CHURAN, for plaintiffs in error.

PINES, MORSE & STEIN, (ALVIN E. STEIN, of counsel,) for defendants in error.

Mr. CHIEF JUSTICE STONE delivered the opinion of the court:

Plaintiffs in error filed their bill in the superior court of Cook county seeking to impress certain real estate in the city of Berwyn with a vendor's lien in the sum of $7000. The bill alleges that on October 5, 1926, they sold and conveyed the premises to defendants in error by warranty deed of that date for the sum of $7000 net; that on October 14, 1926, this deed was recorded; that the deed was drawn by one Joseph F. Beck, a real estate broker, who was authorized by plaintiffs in error to contract for the sale of the real estate but was not authorized by them to receive the payment of the consideration therefor; that plaintiffs in error did not know that the deal was closed or that said warranty deed had been executed by them or had been delivered to defendants in error until the 12th day of September, 1927, and that plaintiffs in error never received any portion or part of the consideration for said sale. The bill prays that a vendor's lien be had on the premises for the purchase money and interest.

Defendants in error answered the bill. They admitted the purchase of the real estate and conveyance thereof to them under deed dated October 5, 1926; averred that at the time of the delivery of the deed they paid the full purchase price agreed upon between plaintiffs in error and themselves after prorating taxes for that year, and denied that Beck was not authorized by plaintiffs in error to re-

ceive payment of the purchase price for said property. The answer also denies the allegation of plaintiffs in error that they did not know prior to September 12, 1927, that the deal was closed and that the deed had been delivered, and alleges plaintiffs in error knew, or by the exercise of reasonable diligence could have known, that the deal was closed and that the deed had been delivered to them on or about October 13, 1926. It is also alleged in the answer that at no time prior to the filing of the bill did plaintiffs in error make any demand on them for the purchase price or make any claim that the same had not been paid, and that the first knowledge that defendants in error had of such claim was when summons was served upon them in this proceeding. The answer further alleges that after the delivery of the deed on October 5, 1926, they took possession of the premises, paid the taxes thereon and about August 1, 1927, improved the premises, which consisted of two lots, with two brick bungalows. The answer also avers that as the deed has been on record since October 14, 1926, plaintiffs in error had constructive notice of the transfer and were guilty of *laches* in asserting their claim for unpaid purchase money, alleging, also, that defendants in error were induced by the acts and conduct of plaintiffs in error to believe that Beck had full authority to receive the purchase price for the premises and that the same was duly paid to him as agent for plaintiffs in error, and the latter are therefore estopped to deny the authority of Beck. The cause was referred to the master, who heard the evidence and reported recommending that a decree be entered dismissing the bill for want of equity. The decree of the chancellor was in accordance with such recommendation. The cause was taken on appeal to the Appellate Court for the First District and the decree was there affirmed. The cause is here on writ of *certiorari*.

The superior and Appellate Courts held that plaintiffs in error by filing their bill to impress the property with a

vendor's lien ratified the sale and collection of the purchase price by Beck. The evidence not in conflict is that defendants in error, through negotiations with Beck, who had the sale of the real estate here involved, agreed to purchase the two lots for $7200; that on October 5, 1926, they, with their counsel, met at the office of Beck to close the deal. Plaintiffs in error were not there. Beck told them that he had the deed and they could go ahead and finish the transfer, which they did. The sum of $400 had been paid to Beck by defendants in error on September 14, 1926, as a deposit, and the balance of the $7200 purchase price, after deducting for taxes prorated and expense of abstract and recording, amounted to $6760.45 and was at that time paid to Beck. Forty-five hundred dollars was paid in the form of a cashier's check payable to defendant in error Ernst Magull, $2200 by cashier's check also payable to Magull, and the balance in currency. Defendant in error Magull, in turning the checks over to Beck, endorsed them in blank.

Plaintiff in error Albert J. Vetesnik in his testimony stated that he did not know how Beck got the deed to these premises from himself and his wife. Aside from the palpable improbability of the truth of such a statement, since Vetesnik is shown to be a business man of experience, who has also made several purchases of real estate, such a defense is not available under the bill, which avers that the sale was made and seeks to have a lien for the purchase price. It is not denied that Beck had the deed. The evidence also shows that he had, some weeks prior to the conveyance, procured an abstract from Vetesnik, had notified him of some objections made by the purchasers' counsel and assisted in procuring the deeds necessary to correct this error. So far as the possession of the deed by Beck and his delivery of it to defendants in error are concerned, the bill seeking a vendor's lien is clearly a ratification of both. The evidence also is that during the years 1925 and 1926 plaintiffs in error paid the taxes on these lots

through Beck and that they did not attempt to pay them in 1927. It also appears from the evidence that plaintiffs in error, from time to time after the delivery of the deed, inquired of Beck about the progress of the deal, and according to the testimony of Vetesnik were told each time that the purchasers had loaned their money and could not get it for some time.

It is alleged in the bill that Beck did not have authority to collect the purchase price for plaintiffs in error. In the course of his examination Vetesnik was asked the following question: "Now, did you ever ask Mr. Beck for the money for these lots?" He answered: "Yes, sir; I called him a lot of times, 'How soon are you going to have the deal settled?' and he said, 'The parties haven't got the money; they loaned it out to some friends and they couldn't get it, so I have to wait.'" It seems clear from this statement that plaintiffs in error were expecting Beck to close the deal and knew that at least an agreement had been reached for the sale of the premises. This the counsel for plaintiffs in error admits, but argues that it was incumbent upon defendants in error to look to the application of the purchase price, and as Beck did not have authority to collect the money, payment of the purchase price to him was not payment to plaintiffs in error. It may first be observed that the rule sought to be invoked, which requires the purchaser to look to the application of the purchase price, has no relevancy except where a trust is involved, and even where such is so, the vendee is not bound to see to the application of the purchase price if he has no notice of the trust. *Brown* v. *Holzman,* 157 Ill. 165; *Union Nat. Bank of Chicago* v. *Goetz,* 138 id. 127.

The principal question in the case is whether defendants in error were justified in paying the purchase price of the property to Beck on an implication of authority on his part to receive the same. That Beck was authorized to pass the title to that real estate is conceded by filing the

bill in this case. He had possession of the deed, with authority to deliver it. This carried with it, in the absence of notice to Magull to the contrary, the implication of authority in Beck to complete the transaction and receive the purchase price.

In the early case of *Hemstreet* v. *Burdick,* 90 Ill. 444, it was held that though an agent having power to convey, uses such property to pay his own debt, the purchaser will be protected because of the implied authority of the agent to deliver the deed and receive the consideration therefor. Sale and transfer of real estate involve at least two things: the transfer of the deed and receipt of the consideration. Both are essential to the transaction, and in the absence of agreement that the payment of the purchase price shall be deferred, the sale of real estate involves not only the delivery of the deed but also the payment of the purchase price. It has never been the rule that a third person may be bound by the acts of an agent which, while within the apparent scope of his authority, are fraudulent as against his principal. *Mason* v. *Bauman,* 62 Ill. 76.

Counsel for plaintiffs in error argues, and Vetesnik testified, that Vetesnik required of Beck that he be notified in order to be present when the transfer of this property was made. Having given the deed to Beck for the purpose of the transfer, the only purpose he could have had in so specifying, if he did, was to be present when the purchase price was paid. He evidently gave the deed to Beck for the purpose of delivery. His bill ratifies the delivery of the deed, and such ratification necessarily is of delivery under the circumstances surrounding the same, among which was the absence of plaintiffs in error. This being so, and there being no contention that payment other than in full of the purchase price was to be made at the delivery of the deed, it is but natural that all parties expected that payment in full would then be made. It follows that by ratifying the delivery of the deed plaintiffs in error ratified the authority

of Beck to collect the purchase price, and cannot now be heard to say that defendants in error did not have a right to rely on what appeared by Beck's possession of the deed to be authority to deliver the deed and collect the purchase price. The acts ratified by the filing of plaintiffs in error's bill were such as to imply authority to receive payment, and defendants in error having paid the purchase price to plaintiffs in error's agent without notice of any limitation on the authority which the latter's possession of the deed implied, should not now be required to again pay for the premises.

Counsel for plaintiffs in error argues that under the law a real estate broker's authority is limited and special and that such authority does not include the right to collect. Whether Beck is to be considered a broker in the general sense of that term is not controlling here, since the facts in this record show that he was the agent of plaintiffs in error, with at least implied authority to close the transaction and accept the purchase price. It is an established rule of agency that a subsequent ratification of the act of the agent is equivalent to an original authorization, and an agreement concluded by the agent and so ratified cannot, in the absence of the express consent of the other party, be limited to a part of the agreement. Such agreement is a unit and must either be ratified or rejected as a whole. The acceptance of a part with full knowledge is constructively an acceptance of the whole. (*Morris* v. *Tillson,* 81 Ill. 607; *Gaines* v. *Miller,* 11 U. S. 395, 28 L. ed. 466.) Justice does not permit one to accept the part of a transaction beneficial to him and repudiate that part detrimental.

Counsel cites cases of other jurisdictions in support of his argument that the ratification of the sale does not ratify the payment of the purchase price to the agent. In support of this contention he cites *Mans' Exrs.* v. *Robinson,* 19 W. Va. 49, *Titus* v. *Phillips,* 18 N. J. Eq. 541, and *Shominger* v. *Peabody,* 59 Conn. 588, 22 Atl. 437. These cases are not the same on the facts and therefore do not

support counsel's argument. In *Mans' Exrs.* v. *Robinson, supra,* there was a written contract to pay money at stated times over a period of years. The evidence revealed that payment had not been paid in money but in horses or other articles of personal property and the terms of the contract were not carried out. *Titus* v. *Phillips, supra,* was a case where the grantee in the deed had not paid any of the consideration, and the court held that he must either pay the purchase price or re-convey the property. *Shominger* v. *Peabody, supra,* was a suit in which the sale of a piano was involved. The sale was admitted. The question was as to the terms of the sale. The court held that by bringing suit on the contract of sale the plaintiff not only affirmed the sale but its terms.

There is also a familiar rule of equity applicable here, which is founded on the principle that where one of two persons suffers a loss, the one whose conduct made it possible for the loss to occur must bear the consequences. (*Drumm Construction Co.* v. *Forbes,* 305 Ill. 303; *Faber-Musser Co.* v. *Dee Clay Co.* 291 id. 240; *McCarthy* v. *Crawford,* 238 id. 38; *Otis* v. *Gardner,* 105 id. 436.) In this case plaintiffs in error, by entrusting the warranty deed to Beck, in addition to his agency to sell, made it possible for Beck to obtain possession of the money and abscond with it, and while plaintiffs in error say he has done so to their serious detriment, this, under the facts, does not constitute a reason for requiring defendants in error, who have in good faith paid the full price to the agent of plaintiffs in error, to again pay for the property.

We are of the opinion that the chancellor was right in dismissing the bill for want of equity, and the judgment of the Appellate Court affirming the decree is affirmed.

*Judgment affirmed.*