Thomas **REEVES** and Olivia Reeves, his wife, Plaintiffs-Appellants,

v.

Earl R. **JONES** and Viola J. Jones, his wife, Raymond W. Prueitt and Dianna J. Prueitt, his wife, Missouri Savings Association, a Corporation, and Gideon H. Schiller, Trustee, Defendants-Respondents.

No. 52272.

Supreme Court of Missouri, Division No. 2.

July 10, 1967.

Lawrence O. Willbrand, St. Louis, for appellants.

Ziercher, Tzinberg, Human & Michenfelder, Erwin Tzinberg, Ackerman, Schiller & Schwartz, Paxton H. Ackerman, Clayton, for named respondents.

LAURANCE M. HYDE, Special Commissioner.

Action in six counts to set aside a warranty deed executed by plaintiff, a deed of trust executed by defendants Jones to defendant Schiller as trustee for defendant Missouri Savings Association, a contract for sale of plaintiffs' real estate executed by plaintiffs and defendants Jones and Prueitt; and ejectment. The court found for all defendants and entered judgment against plaintiffs.

The property involved is a house owned by plaintiffs which they wanted to sell. Plaintiffs put out their own "For Sale" sign in front of the house. Two Reliance Real Estate Company (hereinafter called "Reliance") salesmen came and told plaintiffs they had a buyer and wanted plaintiffs to sign a listing card. Plaintiffs refused to sign but said they wanted $13,500.00. Mrs. Reeves said the salesmen came back with a sale contract signed by defendants Jones and Prueitt. Mrs. Prueitt was the daughter of Mrs. Jones and the house was to be purchased for her daughter and son-in-law. The Joneses were to take title and sign the mortgage papers because the Prueitts were then under 21 years of age. The contract price was $14,500.00 and plaintiffs said they were to get $13,500.00, the rest going to Reliance. Plaintiffs' evidence was that the contract presented to them was signed by defendants Jones and Prueitt before they were shown through the house. Mrs. Jones testified she did see it before they signed the contract. Plaintiffs signed the contract, dated August 27, 1963, which designated them as seller. The contract provided it was to be closed "within 30 days from date of receipt of firm commitment of financing" which Reliance was to arrange and for which seller agreed to pay Reliance "three points" to obtain financing (apparently 3%). The contract also provided: "Commission shall be 6% to be paid by the seller." It also provided: "Earnest deposit to be retained by seller's agent without interest." The earnest deposit was $450.00 and it was to apply on commission or be divided if defendants Jones and Prueitts did not complete the deal.

There was some delay in making financing arrangements but one of the Reliance salesmen called plaintiffs on December 16th to come in the next day to "sign your closing papers and get your check." Plaintiffs went to the Reliance office on the afternoon of December 17th where an employee, Viola Schumacher, presented papers to

plaintiffs which they signed, being a warranty deed to their property and a closing statement. Viola Schumacher took plaintiffs' acknowledgment to the signed deed and kept the deed. When asked about their check said: "You'll have to be patient, Mr. Reeves, * * * there are two parties involved in buying this home and it took a little bit—there are a few complications. * * * We will send your check to you. You will get it Monday. * * * You'll get it through the mail Monday." December 17, 1963, was on Tuesday, so plaintiffs were permitting Reliance to have their deed for a considerable period, apparently expecting to receive a Reliance check for the purchase price. Furthermore, the closing statement signed by plaintiffs stated Reliance was "Agent for Thomas and Olivia Reeves—Seller." It set out the purchase price, amounts paid for taxes, documentary stamps and other expenses, commission and "service charge on loan 3 points." It also contained the following provision, which was signed by plaintiffs: "All documentary and other papers pertaining to this transaction, including the statement on the reverse side hereof (the original whereof has been delivered to the undersigned), have been examined by, explained to, and approved by the undersigned as representing a complete and final compliance with all agreements pertaining to the transaction, and Reliance Real Estate Co. is hereby authorized to complete the transaction as set out therein." Plaintiffs were given a receipt for their signed warranty deed, endorsed on their copy of the closing statement, stating "Received signed Warranty Deed & Affidavit 12-17-63 Reliance R. E. Co., Inc. Per Viola Schumacher." Plaintiffs never had any contact with Missouri Savings Association (hereinafter called "Savings").

Mrs. Jones testified she called plaintiffs on the morning of December 17th, talked to both of them and invited them to appear with her that morning at the closing but was told by Mr. Reeves they did not transact business that way; and that "they were going at three in the afternoon." She said they never told her Reliance was not their agent or to send the money directly to them. She testified: "Q (By Mr. Willbrand) You knew the money that you borrowed from the Missouri Savings and Loan Company had to be delivered to the sellers of the property, Mr. and Mrs. Thomas Reeves? A That is why I invited them to go along." Apparently Mr. and Mrs. Jones went to the Savings office in the morning and plaintiffs went to the Reliance office in the afternoon. Plaintiffs' deed was made to defendants Jones who had arranged to borrow $13,300.00 on the property from Savings and who, on the morning of December 17th, gave Reliance a check for the difference between amount of the loan and the purchase price. Mrs. Jones said she left this check at the Reliance office. Defendants Jones signed the note and trust deed for the loan on the morning of December 17th and endorsed the check for the loan which was made out to them and Reliance. It was left by them with Savings loan officer Granger who delivered it to Reliance after the deeds were recorded. Plaintiffs' warranty deed and the trust deed were recorded on December 18th. Plaintiffs never received any of the proceeds of the check. Defendants Jones and Prueitt said they never employed Reliance and did not pay it any commission.

The court entered judgment for defendants finding: "[T]hat defendant Missouri Savings Association paid the proceeds of said loan to defendants Jones and Reliance Real Estate Company, as agent for plaintiffs, and Reliance Real Estate Company converted said proceeds to its own use and fail to deliver to plaintiffs the sums due them; that there was no privity between plaintiffs and defendant Missouri Savings Association and no defendant had either a duty or an obligation to pay any sums directly to plaintiffs; that all parties to this action were innocent of any wrongdoing and plaintiffs must suffer the loss since, by their actions, they placed their agent, Reliance Real Estate Company, in the position to retain the sums paid."

■ It is true that we have held that the power to receive the entire purchase price and make a conveyance could not be inferred from the naked power to sell even by one who held title for the owner. Stewart v. Wood, 63 Mo. 252. We have also held that a real estate agent's power to sell does not give the agent authority to receive payment of the purchase money. Compton v. Vaughan, Mo.Sup., 222 S.W.2d 81, 82. However, in that case, we affirmed the finding of the chancellor on conflicting evidence that the payment to defendants' agent was ratified by them because of their knowledge of payment to their agent and "committing themselves through the agent to carry the loan for the balance of the purchase price." See also 12 Am.Jur.2d 832, Brokers, § 80; 12 C.J.S. Brokers, § 135, p. 340; Annotation, 30 A.L.R.2d 805. A case in which the trial court's finding, that the broker involved was not authorized to receive payment, was affirmed is Lynn v. Northern Federal Savings & Loan Association, 235 Minn. 484, 51 N.W.2d 588, 30 A.L.R.2d 799. In the annotation following this case it is said: "Where the agent has been entrusted with the deed for delivery to the vendee, it has frequently been held, either on the basis of implied authority or on the theory of apparent authority, that payment to the agent of the amount due upon delivery of the deed constitutes payment to the vendor." 30 A.L.R.2d 807, 820; see also Spikes v. Clark, Mo.Sup., 411 S.W.2d 148; Restatement of Agency 2d, Secs. 62 and 71; Smeade v. Rosen, 121 Cal.App. 79, 8 P.2d 507; Vetesnik v. Magull, 347 Ill. 611, 180 N.E. 390.

■ In the Lynn case, the defendant loan company contended that the delivery of the deed by plaintiffs to their agent to be delivered to the mortgagee established as a matter of law that their agent was authorized to receive payment. The court ruled (30 A.L.R.2d 1. c. 803) that "it was for the jury to determine whether defendant had sustained the burden of establish-

ing that plaintiffs had authorized * * * [their agent] * * * to accept payment of the proceeds of the mortgage on the premises." The jury found to the contrary and judgment on this verdict was affirmed. Likewise in the recent case of Rodekohr v. Gibson, Mo.App., 414 S.W.2d 349, the trial court found for the plaintiff, seller, on the basis of the documents involved and the facts stipulated. We note that in the court's opinion it is stated: "[P]laintiffs executed their deed conveying the property and delivered the deed, with no directions or instructions" * * * [to their broker] * * * "so that the matter could be closed." While the facts of that case may have been a sufficient basis for the trial court's finding for the plaintiffs and affirmance by the court of appeals, we consider the statement of the court of appeals of the question involved (414 S.W.2d 1. c. 351) to be too broad. Our view is that whether an agent's possession of and authority to deliver a warranty deed authorizes payment to the agent is a question of fact to be decided upon the facts of each case.

■ In this present case, the issue of whether as a matter of law it appears that plaintiffs' agent was authorized to receive payment is not involved, because the court found for defendants necessarily on the basis that plaintiffs had given them authority (at least apparent authority) to receive payment of the purchase price. Plaintiffs not only were paying Reliance a commission for making the sale but also an additional commission for obtaining a loan for the purchasers through Savings; and their own evidence indicated that they expected to receive the check of Reliance for the purchase price. These facts, with plaintiffs' refusal to meet with the purchasers for closing and the direction they signed on the closing statement, authorizing Reliance to complete the transaction as set out therein, is a sufficient basis for the finding of the court. See Restatement of Agency,

Secs. 8, 8A, 27, concerning apparent authority.

The judgment is affirmed.

PER CURIAM:

The foregoing opinion by HYDE, Special Commissioner, is adopted as the opinion of the Court.

All of the Judges concur.