*In re* ESTATE OF BARBARA H. DOLAN, Deceased (McLean County Bank, Plaintiff-Appellee and Cross-Appellant, v. Peoples Bank of Bloomington, Executor of the Estate of Barbara H. Dolan, Deceased, Defendant-Appellant and Cross-Appellee).

Fourth District   No. 4—86—0289

Opinion filed December 16, 1986.

William A. Allison, of Bloomington, for appellant.

Luedtke, Hartweg & Turner, of Bloomington, for appellee.

JUSTICE GREEN delivered the opinion of the court:

On September 7, 1983, McLean County Bank (plaintiff) filed a claim in the amount of $27,615.54 against the probate estate of Barbara H. Dolan (decedent), then under administration in McLean County. The claim was based on a promissory note purportedly executed by decedent in favor of plaintiff. No objection was filed, and the court allowed the claim on October 31, 1983. On January 10, 1985, the executor of decedent's estate, Peoples Bank of Bloomington (defendant), filed a petition pursuant to section 2—1401 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1985, ch. 110, par. 2—1401) requesting that the order be set aside. In its petition, defendant alleged the discovery of facts which indicated that decedent did not execute the note. On August 29, 1985, after hearing, the trial court granted the petition to vacate and set the claim for trial.

After a hearing on the merits of the claim at bench, the trial court entered an order on March 27, 1986, allowing plaintiff's claim in the amount of $36,967.65, representing $25,000 in principal, $11,001.37 in interest, and $966.28 in costs. The court, however denied plaintiff's claim for attorney fees. Defendant appeals from the partial allowance of the claim. Plaintiff cross-appeals from the denial of attorney fees. We affirm.

Defendant contends that the trial court's determination is based on the theory that decedent ratified the transaction, and is, therefore, contrary to the manifest weight of the evidence. Plaintiff maintains that the original award which included attorney fees should stand because the circuit court erred in allowing the section 2—1401 motion which granted defendant a new hearing. Plaintiff also maintains that the evidence supported the judgment for principal, interest, and costs

and required an award for attorney fees. Defendant asserts that plaintiff has waived any claim that the trial court should not have allowed the section 2—1401 petition because plaintiff did not appeal the order allowing that petition within the 30-day period of Supreme Court Rule 303(a) (103 Ill. 2d R. 303(a)).

■ We first address plaintiff's assertion that the trial court erred in granting defendant's section 2—1401 petition. Supreme Court Rule 304 is entitled "Appeals from Final Judgments that Do Not Dispose of an Entire Proceeding." (103 Ill. 2d R. 304.) The rule then states in part:

> "Judgments and Orders Appealable Without Special Finding. The following judgments and orders are appealable without the finding required for appeals under paragraph (a) of this rule:
> * * *
> (3) A judgment or order granting or denying any of the relief prayed in a petition under section 2—1401 of the Code of Civil Procedure." (103 Ill. 2d R. 304(b)(3).)

We conclude that the order granting the section 2—1401 petition was appealable by plaintiff under Rule 304(b)(3). Accordingly, the failure to file a timely notice of appeal from that order waived the issue of the propriety of the order. *Sabath v. Mansfield* (1978), 60 Ill. App. 3d 1008, 377 N.E.2d 161.

Plaintiff maintains that the instant order granting section 2—1401 relief lacks the finality required to make the order appealable under Rule 304(b)(3). It notes that the heading for Rule 304 indicates that it is only applicable to final orders and that the instant order did not finally determine the rights of any of the parties to the underlying case, but merely required a rehearing. It cites *Pottorf v. Clark* (1985), 134 Ill. App. 3d 349, 480 N.E.2d 533, and *Gutenkauf v. Gutenkauf* (1979), 69 Ill. App. 3d 871, 387 N.E.2d 918. However, in both cases, the order which was held to lack appealability was not an order entered pursuant to the terms of section 2—1401.

In *Burnicka v. Marquette National Bank* (1982), 88 Ill. 2d 527, 431 N.E.2d 358, the supreme court explained that then section 72 of the Civil Probate Act (Ill. Rev. Stat. 1979, ch. 110, par. 72), which was the predecessor to section 2—1401, state, as does section 2—1401, that a proceeding under that section is not a continuation of the proceeding giving rise to the judgment being attacked. That opinion held that by the terms of Rule 304(b) an order either granting or denying section 72 relief is appealable. No exception was stated. No logical reason exists as to why the decision is not final as to that separate proceeding even though no final determination has been made in

the proceeding giving rise to the order attacked. (See *Gatto v. Walgreen Drug Co.* (1975), 61 Ill. 2d 513, 518-20, 337 N.E.2d 23, 26-27, *cert. denied* (1976), 425 U.S. 936, 48 L. Ed. 2d 178, 96 S. Ct. 1669.) Most orders granting section 2—1401 relief require a new hearing in the underlying action but do not dispose of that case. If only those orders granting such relief which do conclude the underlying action were intended to be appealable as a matter of right, the terms of Rule 304(b)(3) and the opinion in *Burnicka* would likely have so stated. Moreover, because a section 2—1401 proceeding is separate from the underlying proceeding, an order requiring a rehearing in the underlying proceeding is final as to the section 2—1401 proceeding and, thus, has the finality required by the heading to Rule 304. Indeed, as the order is final as to the separate 2—1401 proceeding, a strong argument can be made that the order is appealable as a matter of right under article VI, section 6, of our present constitution (Ill. Const. 1970, art. VI, sec. 6) and as recited in Supreme Court Rule 301 (87 Ill. 2d R. 301).

■■ We next address defendant's contention that the trial court erred in finding that decedent ratified the transaction. In explaining his ruling when it was pronounced in court, the judge did not go into detail but did state that he gave "great credence" to testimony that "the entire amount of the proceeds of the note and loan was indeed given to the decedent, and in fact deposited in her account."

The following facts are undisputed. Decedent died on January 26, 1983, at the age of 69. Prior to her death and during the time of the events in issue, she had chronic emphysema and difficulty in moving about. Larry and Thomas Dolan are her sons. During this time, Larry had been acting as her agent under a purported power of attorney. According to Larry's testimony: (1) about one month before the execution of the note, he discussed with decedent a proposed transaction whereby she would borrow $25,000 to be used by Thomas in a franchise venture; (2) after obtaining necessary documents from plaintiff, he reviewed them with her; (3) her mental condition was then normal; (4) she signed the note with his aid; (5) he then returned the note and other documents to plaintiff and obtained the proceeds; and (6) the proceeds were used for purposes of the franchise venture. The evidence was undisputed that the proceeds from the loan were initially deposited in one of decedent's bank accounts. The defendant called Charles Martin, a documents examiner, who testified that the signature on the note was not that of the decedent nor was it written by her with the help of a second person. On cross-examination, Martin acknowledged that, although it is preferred within his field to com-

pare sample signatures made within six to eight months of the disputed signature, only one of the four samples examined, defendant's exhibit No. 5, was executed within that preferred period. Moreover, Thomas Dolan testified that he assumed the signature on one of the remaining three samples, defendant's exhibit No. 4, to be his sister's, Charlotte Dolan Punke, rather than that of decedent's.

Receipt of benefits with full knowledge of the material facts concerning the original of the benefits and the manner of their acquisition constitutes ratification of the agent's act, unless the principal returns the benefits and repudiates the agent's act within a reasonable time. (*Buford v. Chief, Park District Police* (1960), 18 Ill. 2d 265; 270, 164 N.E.2d 57, 60.) Ratification of an agent's act and the acceptance of the benefits of that act, constructively constitutes an acceptance of the whole transaction, obligating the principal to also accept the detriments associated therewith. (*Vetesnik v. Magull* (1932), 347 Ill. 611, 617, 180 N.E. 390, 392.) Ratification may be proved by circumstances or inferred from acquiescence after full knowledge of the material facts. *Great Lakes Dredge & Dock Co. v. Chicago* (1933), 353 Ill. 614, 627, 188 N.E. 196, 201; *Wing v. Lederer* (1966), 77 Ill. App. 2d 413, 418, 222 N.E.2d 535, 538.

■ The trial court could have believed the uncontradicted portion of Larry Dolan's testimony in which he said that he explained the details of the proposed transaction to his mother and concluded that she at least understood the basic details and knew that the money was to be deposited to her account but did nothing to disaffirm the transaction. The evidence indicated that the deposit was made in early November 1982, and she did not die until January 26, 1983. The trial court's determination that the decedent's estate was liable on a theory of accountability was not contrary to the manifest weight of the evidence and must be upheld by us. *Nibco, Inc. v. Johnson* (1983), 98 Ill. 2d 166, 456 N.E.2d 120.

■ The evidence also sufficiently supports the theory that decedent actually signed the note by herself or with the aid of Larry Dolan. A signature may be made in any manner, including with the assistance of another, so long as it is adopted for that purpose. (See Ill. Ann. Stat., ch. 26, par. 1—201(39), Code Comment, at 51 (Smith-Hurd 1963); *Witt v. Panek* (1951), 408 Ill. 328, 333, 97 N.E.2d 283, 285.) We are not unmindful of the expert testimony, by defendant's witness, Charles Martin, suggesting that the disputed signature is a forgery. However, this testimony is mere opinion and is not controlling. Nevertheless we cannot justify the decision of the trial court on this theory because to do so would be inconsistent with the trial

court's determination to deny attorney fees to plaintiff. The trial court's determination to deny attorney fees is entitled to the same deference as the determination to award judgment for principal, interest, and costs. That determination should be upheld if it is sustainable by any theory supported by the record. (*Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 387, 457 N.E.2d 9, 12.) The decedent was obligated to pay attorney fees here only if she was liable on an express contractual agreement to do so. (*Kerns v. Engelke* (1979), 76 Ill. 2d 154, 166, 390 N.E.2d 859, 865.) No case has been called to our attention whereby an obligation to pay attorney fees on default is implied from the borrowing of money. If the trial court determined that the decedent knowingly signed the note, her estate would be obligated to pay the attorney fees incurred. On the other hand, the trial court could have determined that she had not been advised concerning the obligation to pay attorney fees if suit was brought upon default. Then the trial court could properly have found that she did not ratify that portion of the agreement. The evidence supported such a conclusion here. The two determinations of the trial court are consistent only upon a theory that the decedent did not sign the note but ratified an agreement to pay principal, interest, and costs, but no attorney fees. As such a theory is supported by the evidence, we affirm the order of the trial court in its entirety.

Affirmed.

McCULLOUGH and WEBBER, JJ., concur.