**Litchfield National Bank, Appellant, v. Charles J. McBride, Appellee.**

**Gen. No. 9,015.**

Opinion filed January 15, 1937. Rehearing denied April 6, 1937.

STUTTLE & GODFREY, of Litchfield, for appellant.

H. B. TUNNELL and D. R. KINDER, both of Litchfield, for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court.

On March 9, 1935, plaintiff appellant recovered a judgment by confession in the city court of the city of Litchfield against appellee on two judgment notes, in the sum of $5,878.37, including principal and attorney's fees. One of the notes was in the principal sum of $2,662.46 and the other in the principal sum of $3,000.

On April 24, 1935, defendant appellee filed his motion to vacate said judgment, and for leave to plead to the merits, and on April 27, 1935, the court ordered a part of said judgment, amounting to the sum of $2,593.32, to stand, together with costs, and that execution issue,

and that the balance of said judgment be suspended but stand as security and all proceedings therein be stayed until the further order of the court, and leave was given defendant to answer by May 4, 1935. The defendant having paid the amount due on the note for $2,662.46, the litigation concerns only the note for $3,000. The jury found for the defendant upon the trial of said cause, and the court entered judgment on the verdict and this appeal is from said judgment.

Defendant answered, admitting the execution of the $3,000 note and the power of attorney to confess judgment, but denied that he was then or ever was indebted to the plaintiff on account of said note, and claimed the note was given for the accommodation of the plaintiff and without consideration. Plaintiff replied to the answer of defendant and denied that the note was an accommodation note and that it was without consideration.

It is insisted by appellant that the court erred in not directing a verdict for the plaintiff at the conclusion of the defendant's case and, again, at the close of all of the evidence; in refusing to admit competent evidence offered by plaintiff; in improperly giving to the jury defendant's instruction No. 4, and in refusing plaintiff's offered instructions, Nos. 1, 2, 3 and 4.

It is first contended by appellee, in his argument, that the instructions given and refused, including the motions for peremptory instructions, the verdict of the jury and the motion for a new trial are not properly before the court because appellant failed to comply with the rule of this court, which required that such motion must be preserved by a report of the proceedings at the trial.

This same alleged defect in the record in this case was heretofore brought to our attention by a motion to dismiss the appeal, which motion was denied by the court. The fact that parts of the record are not incor-

porated in the report of proceedings and are therefore not properly certified cannot be taken advantage of by a motion to dismiss the appeal.

This is made clear by sec. 74 (2) of the Civil Practice Act (Ill. State Bar Stats. 1935, ch. 110, ¶ 202 (2); Jones Ill. Stats. Ann. 104.074; Smith-Hurd Ann. St., ch. 110, sec. 198 (2) ) which is in part as follows:

"All distinctions between the common law record, the bill of exception and the certificate of evidence, for the purpose of determining what is properly before the reviewing court, are hereby abolished. . . . All matters in the trial court record actually before the court on appeal may be considered by the court for all purposes, but if not properly authenticated the court may order such further authentication as it may deem advisable."

An appeal cannot be dismissed, but the court may order such further authentication as it may deem advisable, when such defect is properly brought to the attention of the court.

Subdivision 4 of Rule 1 of the Rules of Practice of this court provides:

"A claim that any matter in the trial court record actually before the court on appeal is not properly authenticated may be raised only by motion filed by the appellant or appellee before or at the time of filing his brief. Such motions shall be subject to the provisions of Rule 12, and each motion shall be supported by affidavit showing, not only that the matter complained of is not properly authenticated, but that it is in fact incorrect, and that injury will result to the objecting party because of its inclusion. Unless a motion is made in the manner required by this rule, the record shall be deemed to be correct."

Appellee not having made a motion supported by affidavit, as required by subdivision 4 of Rule 1, before or at the time of filing of his brief, it follows that the

record is deemed to be correct, and this court may consider the instructions given and refused, including the motions for peremptory instructions, the verdict of the jury and the motion for new trial.

It appears from the evidence that the bank was closed in March, 1933, by an executive order of the President at the time of the Bank Moratorium. The comptroller of the currency and the National Bank Examiner refused to permit plaintiff's bank to open unless it raised $10,000 in cash, or collateral notes. L. W. Cline was executive vice president and Mr. Herrick was president of the bank. An effort was being made by them to get the notes or cash so the bank could reopen for business.

Appellee testified that he was in the grocery business in March, 1933, and recalled the occasion when the bank was closed by an executive order called the Bank Moratorium. At that time he had dealings with the Litchfield National Bank. He had a checking account in the amount of about $40 and owed the bank in notes in about the sum of $2,200. He was not a stockholder at that time, nor an official or employee of the bank. The note signed by him was a renewal of the first note given to reopen the bank. This note was given in November, 1934. He had three conversations with Mr. Herrick. Mr. Herrick said: We are still closed and we need help. I offered to pay what I owed the bank, but he said that would not help. Two days later he said to me, Have you thought any more about giving us some help? I said, Yes, I thought a good deal about it, and my opinion is you cannot get any help from me. The next conversation took place in Staunton. Mr. Herrick said: '' If we don't get some help, we can't open the bank.'' And I said, ''How much do you need?'' He replied, We have it all raised except $3,000.00. I told him I had already stated my position and was not interested, and was not placing myself

liable for going on any notes. Mr. Herrick then said that, in consideration of my signing a note, the bank would make no effort to collect it, that it was merely an accommodation, and there was no interest on the note. He said: There is no consideration, you don't become liable for anything, you get no benefit and would be ruled out. I said,—I am not going to sign it. He said: ''You have nothing to lose in signing the note.'' I said I didn't care to sign it, and he said, A note put in the bank without interest would not be collectible and I would not be assuming any risk in signing. Herrick also wanted appellee to get his sister to put up some Building & Loan certificates, which she owned, as collateral for the note. Appellee talked with his sister and told her what Herrick wanted, and that the note would not carry any interest, and that he promised appellee that he would not have to pay the note, and this was the only show of opening the bank. Appellee gave the note and certificates to Herrick. The name of the payee was the Litchfield National Bank. At the time it was delivered Herrick told appellee that ''a resolution would be drawn up by the board of directors and made a matter of record cancelling the notes for those who had given them and rebating those who had put up cash.''

This testimony of appellee stands uncontradicted in the record. The note of appellee was carried as an asset of the bank. This note with others, and $1,000 in cash, was taken to St. Louis and exhibited to Mr. Kane, the National Bank Examiner, and permission was given to open the bank.

Appellant says that two propositions are presented, namely, Was there sufficient consideration for the note, as originally given, under all the circumstances and in any event was not the defendant estopped to deny want of consideration?

Appellant also asserts that there would be no question about legal liability on the note, if at the time of giving the same the defendant was an officer, director or stockholder of the bank. Appellant also insists that appellee gave the note in the first place because he wanted to help the bank reopen and because of friendship for Mr. Herrick, the president; that Herrick stated to him that the bank would never collect the note; that appellee failed to show that the bank had made any such promise, that it would never collect said note, nor did he show that the directors ever considered any such promise. Appellee gave his note for $3,000 secured by good collateral, and the National Bank Examiner, acting upon his promise, permitted the bank to open for business. There was a forbearance on the part of the bank examiner in permitting the bank to reopen and the note given was a sufficient consideration for a promise. Others also, besides the appellee, helped raise the $10,000 in order to have the bank reopen. Before appellee signed the note he was told that $7,000 had been previously raised. The element of mutual promises entered into the consideration. Mutual promises are sufficient consideration one for the other.

It is also contended that appellee wanted Herrick to retain his position at the bank and that the mother and sister of appellee were stockholders to the extent of 30 shares in the bank, and that consideration for appellee's note passed for the benefit of Herrick and his mother and sister.

Appellant also takes the position that even though there was no consideration, appellee is estopped to say there was not. His action in giving the note for $3,000 with full knowledge that the banking authorities would not let the bank open unless $10,000 was raised and appellee afterwards acquiring 20 shares of stock while his note was in the bank, and being elected

president and presiding at directors' meetings and he having signed four reports to the comptroller of the currency on the condition of the bank, showing that he was indebted to the bank on notes amounting to $8,500, which included the note in question, estopped appellee to assert want of consideration.

From the undisputed evidence we are convinced that the note was given for the accommodation of the bank and that no consideration ever passed to appellee for the giving of the note. The claim that the note was given because of friendship for Mr. Herrick and because the mother and sister of appellee were the owners of 30 shares of stock was a sufficient consideration for the giving of the note is without merit. There is no evidence of mutual promises that would raise a consideration for the note and neither is there any evidence in the record by which appellee would be estopped from denying want of consideration.

The Litchfield National Bank is the plaintiff, seeking to recover from appellee on this note, and not the comptroller of the currency or the national banking authorities, or a receiver of the bank, or creditor. The doctrine of estoppel is applied when a person by his words or conduct voluntarily causes another to believe the existence of a certain state of things, and induces him to act upon that belief, so as to change his previous position. In such case such person will be estopped to deny the truth of his representations.

Appellee neither by words nor by conduct caused the Litchfield National Bank, by Mr. Herrick, its president, to believe that his note in question was executed and delivered for a good and valuable consideration, and in fact Mr. Herrick himself as president of the bank induced the signing and delivery of the note, knowing that it was merely made for the accommodation of the bank and without consideration. It was the Litchfield National Bank that made the misrepresentations to

the National Bank Examiner. Its agents, Mr. Herrick, president, and Mr. Cline, executive vice president of the bank, went to St. Louis and presented to Mr. Knox, the National Bank Examiner, $8,500 in notes and $1,000 in cash, and among which notes was the $3,000 note of Mr. McBride, that was known by Mr. Herrick, the president of the bank, to have been given without consideration and as an accommodation note to the bank, and thereby induced the reopening of the bank.

The contention of appellant that appellee is estopped to assert want of consideration because of his action in giving the note for $3,000 with full knowledge that the banking authorities would not let the bank reopen unless $10,000 was raised, and the National Bank Examiner acting upon his promise permitted the bank to open, is not supported by the facts in this case.

While it is true that appellee by the execution and delivery of the note placed in the hands of the bank the power to induce the National Bank Examiner to permit the bank to reopen upon the representation that the notes were all given for a good and valuable consideration, yet the evidence fails to disclose that he had any knowledge that misrepresentations would be made in order to induce the National Bank Examiner to permit the reopening of the bank. All that appellee knew about the requirements demanded to be performed before the bank could reopen for business was what Mr. Herrick told him. At the time he delivered the note to Mr. Herrick he stated to appellee that, "a resolution would be drawn up by the Board of Directors and made a matter of record cancelling the notes for those who had given them and rebating those who had put up cash." From this statement appellee had a right to assume that an accommodation note would meet the requirements of the National Bank Examiner.

Appellant not only having obtained the reopening of the bank by the presentation of the $3,000 accommodation note of McBride as a part of the $10,000 to be raised, but also having carried the note on the books of the bank as an asset, charged with the knowledge that the same was of no value, cannot now be permitted to take advantage of its own wrong and recover on the note in question on the claim that the National Bank Examiner had been deceived and permitted the bank to reopen, and because the stability of banks in general is of great importance to the public, and for that reason appellant would not be permitted to plead want of consideration. The doctrine of equitable estoppel has no application under the facts in this case, as between appellant and appellee.

Any representations or statements made by appellee, as president of the bank, in his official reports to the comptroller, as to his liability on this note, could not be used to estop him from pleading in this suit by the bank, that the note was given for the accommodation of the bank and was without consideration. These reports were made long after the execution of the note, and the bank could in no way have been influenced by what was contained in said reports. The evidence is undisputed that appellee at the time of giving the note was neither a stockholder, official nor employee of the bank. Neither was he interested as a depositor or otherwise. He owed the bank over $2,000 and only had a balance of about $40 in his checking account. Mr. Herrick, the president of the bank, solicited appellee on three different occasions for assistance by way of giving his note in order that the bank might reopen. It was on the third occasion that Mr. Herrick, the president of the bank, said to him, if we do not get some help we can't open the bank; that the money was all raised but $3,000. At this time appellee informed him

that he was not interested and was not placing himself liable for giving on any notes. Mr. Herrick then said to appellee that in consideration of his signing a note the bank would make no effort to collect it; that it was merely an accommodation and there was no interest on the note. Herrick said to appellee, there is no consideration and you do not become liable for anything. You get no benefit and would be ruled out. You have nothing to lose in signing the note. The above assurances of Mr. Herrick was what induced appellee to sign the note which was given solely for the accommodation of the bank.

Appellant insists that even though it be true that appellee was induced to execute and deliver the note because of the promises of Mr. Herrick, the president of the bank, yet the evidence fails to show that the bank ever made any such promises, that it would never collect the note, nor does it show that the directors ever considered any such proposition.

The promises were made by Mr. Herrick, the president and duly authorized agent of the bank, and although as such agent he may have been unauthorized to make such promises, yet the bank accepted the note and presented it together with other notes to the National Bank Examiner at St. Louis and procured the reopening of the bank, and thereby ratified the acts of its agent.

A principal who ratifies thereby assumes responsibility for the unauthorized act as it was done, together with its burdens and the instrumentalities used by the agent in doing it, the same as if the principal had authorized the act in the first instance. 2 C. J. S. Agency, sec. 64c.

A principal cannot avail himself of such acts as are beneficial to him and repudiate such as are detrimental, whether the ratification be express or implied. If a principal elects to ratify any portion of an un-

authorized transaction of his agent he must ratify the whole of it; and if he ratifies any part of the transaction, the result is that he ratifies the whole transaction. 2 Am. Jur. Agency, sec. 223; Am. Law Inst. Restst. of Agency, sec. 96; *Vetesnik v. Magull,* 347 Ill. 611, 180 N. E. 390; *Haas v. Sternbach,* 156 Ill. 44, 41 N. E. 51.

After having availed itself of the note to induce the National Bank Examiner to permit the bank to reopen for business, appellant cannot now be heard to say that the bank never made any such promises, and neither can it now repudiate that part of the contract which guarantees to appellee that the note was made for the accommodation of appellant and was without consideration and that in consideration of the signing of the note by appellee the bank would make no effort to collect it.

In view of the uncontradicted testimony in the record with reference to the statements and agreement of Mr. Herrick, president of the bank, made at the time the note was executed, we are at a loss to understand the position now taken by appellant, and in this connection we quote from the case of *Straus v. Citizens' State Bank,* 254 Ill. 185, 98 N. E. 245, in which it was said by the court: "If the note relied upon as a set-off was made, executed and delivered to the bank without any consideration, and upon the agreement appellee should never be required to pay said note, it is difficult to see how a recovery could be sustained by the bank. If there was no consideration for the note, the bank cannot be a holder in due course for value. There are some propositions that are so well settled and clear that any attempt at argument in support of them is a useless expenditure of time. That a promissory note, made and executed without consideration and received by the payee upon an agreement that the maker should never be called upon to

pay the same, is invalid in the hands of such payee, and cannot be enforced against the maker, is a proposition of that character.''

Complaint is also made because the court refused to allow the witness Cline, who was executive vice president of the bank, to testify that he gave a note for $3,000 in reliance on McBride's promise to also give a note for $3,000. We are of opinion that the court did not err in so ruling. The allegation of the pleadings and the issue raised was that mutual promises were made between Charles J. McBride, defendant, and other citizens in Litchfield, who at that time were stockholders in the bank, and that they agreed with each other that they would raise the sum of $10,000, either by cash or negotiable instruments, and deliver the same to plaintiff.

There is no evidence in the record even tending to show that mutual promises were made between McBride, and other citizens of Litchfield, that they would raise the sum of $10,000 and deliver the same to plaintiff. The evidence does disclose that at the time appellee was induced to give his note for $3,000, all but the sum of $3,000 had been raised, and that at no time prior thereto had he ever promised to give a note for $3,000.

Complaint is also made of the giving and refusal of instructions, but in the view we have taken of the case it will be unnecessary to consider the given and refused instructions complained of.

The judgment of the city court of the city of Litchfield is affirmed.

*Judgment affirmed.*