Oscar Steiner, Appellee, v. Rig-A-Jig Toy Company, Appellant.

Gen. No. 46,718.

First District, Second Division.

May 29, 1956.

Rehearing denied June 19, 1956.

Released for publication June 19, 1956.

411

Grossman & Grossman, of Chicago, for appellant; Samuel Grossman, of Chicago, of Counsel.

Jesse H. Brown, of Chicago, for appellee.

JUDGE ROBSON delivered the opinion of the court.

Defendant, Rig-A-Jig Toy Company, appeals from a judgment confirming a judgment by confession previously entered in favor of the plaintiff. The confessed judgment on two promissory demand notes executed by the defendant corporation was in the sum of $40,000 principal, $19,200 interest, and $3,000 attorney's fees.

The records reveals that the plaintiff, Oscar Steiner, M. S. Landfield, and the intervening petitioner, Joseph Wertheimer, had, since 1935, been engaged in a series of business relationships. In 1945 these three men agreed to participate in a new venture involving a child's toy, called a Rig-A-Jig. Plaintiff and Wertheimer each advanced $10,000 to the enterprise in 1945 and early 1946. This $20,000 was designated as "Loans Payable—Wertheimer-Steiner" on the corporate books.

In 1946 plaintiff and Wertheimer advanced an additional $40,000 to defendant by check drawn on the Craftsmen Finance Company, of which they were sole and equal owners. This $40,000 was designated "Loans Payable—Craftsmen Finance Company" on the corporate books. Later that year Wertheimer and the plaintiff each received $10,000 from Rig-A-Jig. The corporate books showed this payment as canceling out the 1945 "Loans Payable" of $20,000 to Steiner and Wertheimer. The $40,000 "Loans Payable—Craftsmen Finance Company" remained open.

In July of 1948 two promissory notes for $20,000 each, payable on demand, were executed by defendant; one made payable to Craftsmen, and one jointly to plaintiff and Wertheimer. The notes were indorsed by the respective payees and delivered to the plaintiff. These are the notes on which the plaintiff confessed judgment. Upon the filing of defendant's amended petition the judgment was opened up. The amended petition alleged, in substance, that the notes were not issued for the purpose of evidencing a debt and, if they be recognized as evidencing a debt, payments were made which should be credited against such obligation. Wertheimer thereupon filed his intervening petition alleging that he owned a one-half interest in each note, and making factual allegations in substantial agreement with the allegations of defendant's amended complaint. The trial court reserved the hear-

ing on the intervening petition and decided that the plaintiff was entitled to the judgment as confessed.

The general theory of defendant's case, as stated in its brief, is that "it is not always true that a promissory note is given to evidence a debt. . . . It devolves upon the court in any such ambiguous situation to ascertain the intent of the parties inter se. . . ." This unique statement precedes a detailed analysis of testimony and exhibits, but nowhere is there a clear statement of the actual defense upon which the corporation relies. There is no charge of fraud, and payment was not pleaded as a complete defense. Defendant's argument, in a vague way, seems to hint at want of consideration for the notes, but nowhere does it specifically rely on this as its defense to the action.

At the outset of a business venture an atmosphere of optimism and friendliness nearly always prevails and breeds impatience with the details of legal contracts. In their eagerness to organize what appears to be a profitable venture men enter into business deals with only vague notions of their relationship to one another and to the enterprise. Characteristic of such a situation is the failure to anticipate the problems that might ensue if the enterprise was unsuccessful or the participants became hostile. The record in this case, filled as it is with uncertainties and inconsistencies, is an example of what may result from such a situation. Ambiguous and uncertain evidence cannot dispel the absolute and unconditional obligations that are represented by a promissory note.

On this appeal defendant contends that the trial court erred in the following respects: (1) in deciding the issues against the manifest weight of the evidence; (2) in excluding certain testimony and documentary evidence, and (3) in reserving the trial on the intervening petition until after the trial of the issue between plaintiff and defendant.

A substantial part of defendant's case is made up of parol evidence to the effect that the books of the corporation and the notes in question do not reflect the true intention of the parties, and that the notes were not really intended to evidence a debt. In Weinstein v. Sprintz, 234 Ill. App. 492, plaintiff indorser, not a holder in due course, sued the maker of a $500 check. The defense was that the maker and payee intended said check to be a receipt for money which the maker gave to the payee at the beginning of their partnership venture. The court said that the check on its face was an absolute order given by defendant to the payee, and parol evidence which tended to show that the check was merely intended to be a receipt and not for the payment of money was not admissible. Werner v. Steele, 8 Ill.App.2d 460; Chandler v. Chandler, 326 Ill. App. 670.

It would seem that the rule of these cases is applicable to much of the testimony of defendant's witnesses. We need not decide this case on that theory, however, because even if parol evidence was properly made a part of the record, we feel that the trial court's decision was nevertheless not against the manifest weight of the evidence.

In determining whether or not the trial court's decision was against the manifest weight of the evidence, we must look to the record to see if there was substantial evidence supporting the plaintiff's position.

There is testimony to the effect that at the time the original $20,000 was advanced, in 1945 and early 1946, the issuance of stock was discussed. But there was no direct testimony that it was agreed that the money paid in at that time was to be purchase money for corporate stock and not a loan. Wertheimer testified, in fact, that "the interest was not clearly stated at that time because we were a little nebulous in our thoughts." *It is undisputed that neither Wertheimer or Steiner*

415

*ever received any stock of the company.* The vagueness of Wertheimer's testimony at that point is representative of the vague state of the record with respect to the incorporation of this enterprise and the steps leading thereto. Nowhere does the record indicate when the defendant was incorporated, whether there were any subscription agreements, or other similar documents which could have shed considerable light on the issues involved in this lawsuit.

Later in 1946 plaintiff and Wertheimer each advanced an additional $20,000 to the company, in accordance with an oral agreement. It is not clear whether Landfield was to put in $20,000 or $20,000 worth of printing. The corporate books nowhere reflect the receipt of cash or services from Landfield with respect to this agreement. There is testimony that it was also orally agreed that this advance was only to be repaid out of profits.

The $40,000 was originally received by the corporation in the form of a personal check from plaintiff or Wertheimer, which was followed by a letter from Wertheimer to Landfield dated June 25, 1946. The letter referred to the $40,000 advance as "the last of the requests for capital investment in Rig-A-Jig." But the letter also said "that money coming in from Rig-A-Jig now will be used to pay off Oscar and myself as quickly as convenient. . . ." This latter statement would be more likely to emanate from a creditor to a debtor, than from a purchaser of stock to a corporation or from a gratuitous contributor of funds to a corporation.

On June 28, 1946, plaintiff wrote to Landfield, enclosing a check for $40,000 issued on Craftsmen Finance Company, and requesting the return of the earlier $40,000 personal check. The letter explained that this procedure was being followed in order to avoid "certain tax complications." On direct examina-

416

tion the defendant's witness Glasser, accountant for defendant, testified that just prior to the time the $40,000 was advanced to Rig-A-Jig, he and Wertheimer discussed the tax consequences in the event the said $40,000 was lost. Glasser testified: "He then stated that suppose instead of Steiner and he making this as a *personal loan* to Rig-A-Jig, that was handled through the Craftsmen Finance Company, which is a corporation that they had. . . . And he stated then if that were the case he certainly would want to make it as a *corporation loan*. . . " That testimony indicates that Wertheimer's primary concern was not whether or not to make this in the form of a loan, but whether to make it a personal loan or a corporate loan.

If the $40,000 advance was not intended to be a loan, it is not clear just what it was supposed to be. Wertheimer did testify that they considered it to be a "capital investment" and that such term was actually employed in the conversations between the parties. At the same time, the witness Glasser, on cross-examination, testified that "capital contributions" are not purchases of stock, and that this $40,000 was really intended to be a "capital contribution."

Defendant relies heavily on the fact that the parties referred to the $40,000 advance as a "capital investment" or "capital contribution" in both their conversations and their written correspondence. These terms appear to have been used interchangeably and loosely. The mere use of these terms, standing alone, and in the light of other uncertainties and inconsistencies appearing in the record, did not, in our opinion, constitute evidence sufficient to overcome the absolute and unconditional obligation of the notes.

After judgment was confessed against defendant, in 1954, Glasser, defendant's accountant, altered and predated the corporate books to reflect that the $40,000 advance was a "capital contribution" rather than a

417

loan, and that certain repayments of that contribution had been made. There appears to have been no records or data which would support this change. The self-serving nature of this post-judgment alteration of the books clearly renders these entries devoid of any evidentiary value. If any relevancy can be found in this manipulation of the books, it lies in the unfavorable inference that a calculated attempt was made to construct a defense, and the alteration of the books was resorted to because of the difficulty of that task.

It is true that the notes sued on were not executed until July of 1948, two years after the $40,000 was advanced to the corporation. An antecedent debt, however, is good consideration for a promissory note. Ill. Rev. Stat. 1955, ch. 98, sec. 45; McLeish v. Hanson, 157 Ill. App. 605. A promissory note absolute on its face creates, in itself, the presumption that a debt is owing from the maker to the payee. Hinshaw v. Security Trust Co., 48 Ind. App. 351, 93 N. E. 567. This presumption is rebuttable. However, when such presumption is strengthened and substantiated by the corporate records of the maker, the rebuttal evidence must be of a very clear and cogent nature, particularly when it is parol evidence.

We are of the opinion that the testimony and evidence presented by the defendant was not sufficient to overcome the presumption that the notes in question did evidence a debt, and that such debt arose by virtue of a $40,000 loan from plaintiff and Wertheimer to the defendant.

Defendant further argues that even if the moneys advanced by plaintiff and Wertheimer are held to be loans, the trial court erred in giving judgment for the face value of the notes, because the evidence disclosed that there had been partial repayment of the debt on two different occasions. The first partial repayment is said to have occurred in December of 1946,

when defendant gave plaintiff and Wertheimer each a check for $10,000. The corporate books showed this payment to be in satisfaction of the 1945 $20,000 "Loans Payable—Steiner-Wertheimer." The record affords insufficient basis for disturbing the trial court's finding that the original $20,000 advance was a loan. Moreover, defendant's own witnesses gave conflicting accounts as to the purpose of the $20,000 distribution. It is important to note that this distribution took place after the $40,000 had been paid in, but before the notes in question were executed. The fact that the notes which evidenced the debt of $40,000 were executed subsequent to the date of the $20,000 distribution is, in itself, evidence that said distribution was not intended to be in partial repayment of the $40,000 loan. This fact, plus the state of the corporate books, along with the vague and inconsistent evidence produced by defendant, leads us to the conclusion that the $40,000 debt, evidenced by the promissory notes, was not reduced by the $20,000 distribution in December 1946.

■ Defendant contends that its funds which were transferred to Town Investment Company in 1948 and 1949 and then, in 1950, distributed equally to Steiner, Wertheimer and Landfield, constituted the second partial repayment on the $40,000 debt. The evidence concerning this alleged distribution is not clear. Assuming, however, that there was such a distribution, we are of the opinion that the trial court properly disregarded the testimony on this issue. The fact that this distribution was made equally to plaintiff, Wertheimer and *Landfield,* instead of to plaintiff and Wertheimer alone, indicates that it was not intended to be in repayment of a debt owed to Steiner and Wertheimer. Moreover, the notes were in existence at this time and no attempt was made to have them reflect that a partial repayment had been made. Proof of pay-

419

ment does not, in itself, conclusively determine that the payment was made upon the notes. Robison v. Bailey, 113 Ill. App. 123.

■ Having determined that a $40,000 debt was owing, we must consider the effect of the uncontradicted testimony of defendant's witnesses that it was orally agreed that repayment was only to be made out of profits. The importance of this testimony arises from the fact that the defendant corporation never made any profits. In Handley v. Drum, 237 Ill. App. 587, the defendant purchased stock from the plaintiff and executed a note as consideration. In plaintiff's action on the note, defendant testified that at the time said note was executed the parties orally stipulated "that the note should be paid only out of dividends declared by" the company. In reversing judgment for defendant, the Appellate Court said: "The promissory note was a written contract to pay $2,500, which was absolute in its terms. It is elementary that the defendants could not show by parol, even as against the payee of the note, that the parties had an understanding that the contract in fact was conditional." The court further said: ". . . it must be held that the defendants delivered the note 'for the purpose of giving effect thereto,' and even if, as the trial court put it in the instruction above quoted, the parties agreed prior to the execution of the note, 'that the defendants would not be liable to pay said note except from the profits' of the company and the company made no profits, the defendants are nevertheless liable in this action because the alleged agreement did not impose a condition precedent to a complete delivery of the note but rather one which applied to the payment of the note and as this contradicted the express terms of the note, to be binding on the parties, it must have been made in writing and could not be shown by parol." This case is clearly in point and precludes defendant from showing conditions of payment by parol evidence. Also see

420

Foy v. Blackstone, 31 Ill. 538; Dairyman's State Bank v. Dunham, 271 Ill. App. 249; Tegtmeyer v. Nordlund, 259 Ill. App. 247; Weinstein v. Sprintz, 234 Ill. App. 492.

Defendant's second contention is that the trial court erred in excluding from evidence a certain letter, and also certain testimony of defendant's witness, Kenost. The letter in question was from the plaintiff to Landfield, dated July 30, 1951. It constitutes a confirmation, by plaintiff, of a verbal agreement of settlement between plaintiff and the defendant. Plaintiff makes reference therein to his "one-third interest" in defendant corporation. The general and undisputed rule is that offers of settlement, as such, are not admissible into evidence. Hill v. Hiles, 309 Ill. App. 321. It is defendant's position, however, that when an offer of settlement contains certain independent and relevant admissions of fact, the admissions are admissible in evidence against the party making them even though they form part of an offer of settlement. This appears to be a correct statement of the law. Hook v. Bunch, 180 Ill. App. 39. The only explicit admission contained in this letter is that the plaintiff had a one-third interest in defendant corporation. This does not appear to us to be a relevant admission because it is not adverse to the interests that the plaintiff is asserting in this action. Even if the plaintiff did have a one-third interest in the defendant, that would not preclude him from loaning it money. In any event, we do not feel that the exclusion of this letter was reversible error because we cannot say its admission into evidence would have justified a different finding by the trial court.

 We find no merit in defendant's contention that the trial court committed reversible error in preventing the witness Kenost from testifying to a conversation between Wertheimer and Landfield concerning the adjusting entries of March 1, 1954. Those en-

421

tries were made after judgment had been confessed against defendant, and the entries, themselves, and conversations concerning them, particularly conversations out of the presence of the plaintiff, were of such a self-serving nature and so lacking in probative value, that their exclusion could not be a basis for reversal.

██ ██ Defendant's third contention is that the trial court erred in reserving the trial on the intervening petition until after the trial of the issues between the plaintiff and defendant. A trial court must be allowed broad discretion in determining which issues shall be heard first. No abuse of that discretion has been shown in this case. Administrative convenience is the primary factor influencing the trial court's determination of which issues shall be heard first. The instant litigation would have been concluded had the court found that the defendant was not indebted to the plaintiff. There would then have been no necessity to pass on the intervening petition. Thus, administrative expediency was best served by hearing the debt issue first.

There being no adequate defense to the notes sued on, and no reversible error in the conduct of the trial, the judgment of the trial court is affirmed.

Judgment affirmed.

McCORMICK, P. J. and SCHWARTZ, J., concur.