LEONARD GUZELL, Plaintiff-Appellant, *v.* KASZTELANKA CAFE AND RESTAURANT, INC., *et al.*, Defendants-Appellees.

First District (4th Division)    No. 79-1485

Opinion filed August 7, 1980.

Welfeld & Chaimson, of Chicago (Peter C. Alexander and Frederic I. Chaimson, of counsel), for appellant.

James P. Gallagher, of Chicago, for appellees.

Mr. JUSTICE ROMITI delivered the opinion of the court:

The plaintiff filed action against the defendants on a promissory note. The defendants defended on the ground of lack of consideration, and the trial court after hearing all the evidence so found. The plaintiff has appealed, contending:

(1) the evidence was insufficient to overcome the presumption of consideration;

(2) if in fact no consideration was given, the defendants are estopped to deny consideration since the note was used in obtaining a liquor license;

(3) the defendants are estopped to deny consideration because they returned the note to the plaintiff after using it to obtain the liquor license.

The plaintiff, Leonard Guzell, filed suit on June 23, 1976, on a note for $7,000 executed by the Kasztelanka Cafe and Restaurant, Inc., and guaranteed by John Zakrzewski and Irena Zakrzewski. The defendants

admitted execution of the note but denied there was any consideration and further alleged they were fraudulently induced to sign the note.

Guzell testified as the sole witness for himself and was also called as a defense witness under section 60 of the Civil Practice Act. (Ill. Rev. Stat. 1979, ch. 110, par. 60.) On direct examination, Guzell introduced the note and testified that it was signed in his office at 3114-16 North Milwaukee by Irena and John Zakrzewski on or about the date on the note (March 18, 1976) in Guzell's presence. After the note was signed it was handed to Guzell, and he gave Irena $7,000; the $7,000 was not a gift. In June of that year he demanded full payment of the note from Irena. She made no comment. Guzell speaks Polish as well as English.

On cross-examination, and when called as a defense witness under section 60, Guzell testified that the note was prepared on the date it bears (March 18, 1976) probably about an hour before it was signed. He said he had an independent recollection of the date the note was signed. However, he admitted that in his deposition he said he did not remember the date when the note was signed.

The note was prepared by Jonah Rosenberg, an attorney, in Guzell's office on Guzell's typewriter at Guzell's direction. Guzell had no conversation with him. Jonah knew what to put in the blanks because he had asked Guzell and had written it down. Guzell never discussed the loan with Jonah and had no discussion with him the day the note was signed.

Jonah was present in the office when John and Irena arrived but left before they signed the note. He was not present when they signed the note. Irena and John were probably in Guzell's inner office with him for a half hour before the note was signed.

Although there was no reason why the money could not have been transferred when the note was signed, it was not. After the signing, John left. Irena stayed for about 20 minutes. There was, however, no conversation. Then she left and later came back. Guzell was aware she was coming back.

The money was transferred to Irena about two hours after the note was signed. Only Guzell and Irena were present. It was transferred in cash, in denominations of 100's down to 5's. The cash had been accumulated and was kept in a floor safe in his office.

Guzell got the money he gave Irena from the safe. In his deposition he had stated that most of it had been in his pocket. He explained this answer by saying that after he got it out of the safe, he put it in his pocket. He never asked what the money would be used for. Irena said it would be used in the business.

After the note was signed, Guzell put it in his safe. He kept it there all the time until he gave it to his attorney.

Guzell denied that Elizabeth Orlowicz, a witness for the defendants, had been his partner. He stated she had just worked for him. He stated that while she was present in the other office, she was not in the inner office when the note was signed. He had no discussion with Elizabeth on the day the note was signed. He also denied that he had ever appeared in a police station in connection with the application for a liquor license. However he said he could not remember if he appeared with Elizabeth in the police station and was fingerprinted with respect to the application for the liquor license. (Police documents submitted into evidence disclose that in fact he was fingerprinted in connection with the liquor license application.)

John Zakrzewski, president of Kasztelanka Cafe and Restaurant, Inc., testified that the note was signed the day before they got a liquor license for the cafe. On the day in question, he, Irena and Jonah Rosenberg, the attorney who represented the corporation, were at the police station to apply for a liquor license. They had a problem. As he explained "Because what the corporation took, we're short, and evidence—signature for $7,000. We put money on that day, and we not have any book." He needed documents for $7,000. They left the police station after noon. Jonah called Guzell. They then went to Guzell's office, and Jonah typed the note in Guzell's office. The witness, Irena, Elizabeth and Guzell were present when Jonah typed the note. They were also present when the note was signed at about 1 p.m.

John stated that he never asked Guzell to loan him $7,000 and that Guzell never gave or transferred $7,000 to him. After the note was signed, he and Irena took the note to the police station and left it there. He did once ask Guzell for the note. Guzell responded, "Not now."

On cross-examination, John stated that he did not have $7,000 when he took the note to the police department. He wanted it to show that he had received $7,000. He did not believe that he had lied to the police department because they "got money in the corporation book already. We got money. * * * Only we need receipt."

Jonah Rosenberg, who had provided some legal services for the cafe without charge, testified that while he had not initiated the liquor license application, he was asked to help when some problems developed. He accompanied Irena and John to the police station where they presented documentary evidence as to the source from which they obtained the capitalization. The complete amount of capitalization evidence was not submitted at that time. The documents presented did not satisfy the police officer. The amount involved was about $7,000. The witness typed the note at the Milwaukee office he shared with Guzell. There were so many conversations between the parties the witness did not remember specific conversations or who was present.

Elizabeth Orlowicz testified that she is a shareholder of the corporation. She had been a partner of Guzell and is now in competition with him. She worked at the Milwaukee office (Guzell had two offices) from May 1975 to July 1977. During that time there was no safe at the Milwaukee office. There was one at the other office.

The witness was present when the note was signed and witnessed the signing. The partners conversed before the signing of the note. They explained to Guzell that they needed a note for $7,000. They did not need the money as the money was already put in the business. Guzell did not give them any money for the note.

After Irena and John signed the note they took it to the police station. After that "they" gave him back his note. The witness did not say who "they" were, nor does it appear the witness actually had any direct knowledge of how Guzell recovered the note.

Guzell and the witness went to the police station a couple of days later where he was fingerprinted.

On cross-examination, the witness acknowledged that she owned a share of the corporation. She was not sure how much. She was shown an undated resolution supposedly of the corporation, signed by John, authorizing the borrowing of money from Guzell. This resolution which purports to have been passed at the first meeting of the shareholders and board of directors (other documents in evidence indicate the first meeting was held at 7 p.m. on March 18, 1976) was clearly not typed on the same typewriter as were the other corporation papers. She stated she had never seen this resolution, although she had seen the corporate minute book. The documents in evidence indicate that she was not a stockholder on March 18, 1976.

Elizabeth asked Guzell to return the note. So did John and Irena.

Irena Zakrzewski was the last witness. She is Polish, does not read English and testified through an interpreter. She was the secretary of the corporation in 1976. She testified that before the note was signed, she, John and Jonah had been at the police station. From there, they went directly to Guzell's office on Milwaukee Avenue. They told him they were "short $7,000 regards their financial obligation at the police station"; that is they could not quickly secure a liquor license unless they deposited a note for $7,000. The note was prepared and taken to the police station within an hour. She, John and a Mr. Radosz, the other stockholder, took it to the station. She agreed with the other defense witness that Elizabeth had been present when the note was signed. Irena denied that they ever received $7,000 from Guzell. She also denied that she ever gave the note back to Guzell. She deposited it at the police station and did not know how Guzell got hold of the note. Although they never received $7,000 from Guzell, she did not feel she was lying when she gave the note to the

police because they did put that amount of money into the business. If they had not brought in the note, they would not have been able to receive the license. But it was done in good faith.

She also indicated that this was the first time she had been involved with this type of business venture so could not fully describe what a corporate minute book was.

The court, after hearing the witness and closing arguments by both counsel, ruled for the defendants.

## I.

■■ In an action on a validly executed negotiable instrument, consideration is presumed. (*Stolzenbach v. Pagoria* (1979), 71 Ill. App. 3d 863, 390 N.E.2d 376; *Steiner v. Rig-A-Jig Toy Co.* (1956), 10 Ill. App. 2d 410, 135 N.E.2d 166, *appeal denied* (1956), 9 Ill. 2d 628.) This presumption, however, is rebuttable. (*Steiner v. Rig-A-Jig Toy Co.* (1956), 10 Ill. App. 2d 410, 135 N.E.2d 166, *appeal denied* (1956), 9 Ill. 2d 628.) In nonjury cases the credibility of the witnesses and the weight afforded their testimony are questions to be determined by the trial court, and a reviewing court will not substitute its judgment as to the credibility of witnesses unless the findings of the trial court are against the manifest weight of the evidence. (*Shanahan v. Schindler* (1978), 63 Ill. App. 3d 82, 379 N.E.2d 1307, *appeal denied* (1978), 71 Ill. 2d 621.) We do not find the findings of the trial court here are so unreasonable as to be against the manifest weight of the evidence.

*Stolzenbach, Steven v. Falese Land Co.* (1977), 50 Ill. App. 3d 231, 365 N.E.2d 967, *appeal denied* (1977), 66 Ill. 2d 642, and *Steiner*, relied on by the plaintiff, do not mandate reversal in this case. *Stolzenbach* and *Steven* both stand for the proposition that the mere pleading of lack of consideration, even if that denial is under oath as it was in *Steven*, does not overcome the presumption of a valid consideration, for that can only be done by offering evidence in support of the allegation, as was done in this case. The court in *Stolzenbach* merely affirmed the trial court's finding for the plaintiff, just as we affirm the trial court's finding for the defendants. The court in *Steven* did reverse the trial court's finding for the maker. However, in that case not only did the maker of the note fail to testify, being barred by the Dead Man's Act (Ill. Rev. Stat. 1975, ch. 51, par. 2), but the evidence as to the validity of the note included evidence that the maker of the note had endorsed a check in the amount of the note on or about the date thereof, that an interest payment in that amount was due on that date, and that the maker's bank account was overdrawn on that date. Besides the maker's denial under oath in his pleading, the only evidence offered by him was that the estate had not shown the note as an asset. By contrast, in the present case, the only evidence that the plaintiff

gave defendants $7,000 was his testimony and the note; there was no evidence of a check paid to defendants and negotiated by them in that amount, there was no evidence such amount was deposited in any bank account, or withdrawn from the plaintiff's, or that debts in that amount were due and unpaid on the date of the alleged loan.

The plaintiff, citing *Steiner v. Rig-A-Jig Toy Co.* (1956), 10 Ill. App. 2d 410, 135 N.E.2d 166, *appeal denied* (1956), 9 Ill. 2d 628, contends that the corporate resolution authorizing a loan proves that consideration existed. Plaintiff argues that the resolution could not have been made after the note was signed but had to have been made before or contemporaneously with the note. This, however, is pure speculation. In fact the records indicate that the first meeting of the shareholders, at which this resolution was allegedly passed, was scheduled for 7 p.m., May 18, 1976. The court in *Steiner*, in affirming the trial court's ruling for the payee, did state that when the presumption of consideration is strengthened and substantiated by the corporate records of the maker, the rebuttal evidence must be of a very clear and cogent nature. *Steiner* involved a designation on the books of the corporation of the specified amounts as "loans payable." After judgment was confessed against defendant, it altered the books to reflect that the advance was a capital contribution. On the other hand, the only corporate evidence in the case at bar is an undated resolution apparently typed on a different typewriter than that used for the other records.

## II.

The plaintiff next contends that the defendants are estopped from raising the defense of lack of consideration since allegedly the note was used to deceive the police department, citing *D'Oench, Duhme & Co. v. Federal Deposit Insurance Corp.* (1941), 315 U. S. 447, 86 L. Ed. 956, 62 S. Ct. 676; *Horwich v. Davis* (1920), 220 Ill. App. 40; *Federal Deposit Insurance Corp. v. Wainer* (1955), 4 Ill. App. 2d 233, 124 N.E.2d 29. None of these cases are in point, as they merely stand for the proposition that the maker of a note will be estopped to deny the validity of the note when the note is sued upon for the benefit of those the maker intended to defraud. However as was clearly established by *Litchfield National Bank v. McBride* (1937), 289 Ill. App. 420, 7 N.E.2d 348, where the suit is by the bank-payee and not by national banking authorities, the receiver, or the creditors of the bank, the maker will not be estopped to deny failure of consideration. In the present case, the suit is by the payee and not by the public authorities.

If, in fact, the agreement between the parties should be construed as one to deceive the public authorities, then plaintiff cannot be treated as an innocent party, since it is clear from the evidence that he was aware of

the purpose for which the note was used. He and the defendants are *in pari delicto*. It is well established in Illinois that where the parties are *in pari delicto*, the court will aid neither party in the enforcement of the contract but will leave them as they are. (*Broverman v. City of Taylorville* (1978), 64 Ill. App. 3d 522, 381 N.E.2d 373; *Shanahan v. Schindler* (1978), 63 Ill. App. 3d 82, 379 N.E.2d 1307, *appeal denied* (1978), 71 Ill. 2d 621; *Mechandise National Bank v. Kolber* (1977), 50 Ill. App. 3d 365, 365 N.E.2d 688.) And while, where a contract appears innocent on its face there is a presumption of legality, the presumption may be rebutted by clear and convincing evidence to the contrary. *Shanahan v. Schindler* (1978), 63 Ill. App. 3d 82, 379 N.E.2d 1307, *appeal denied* (1978), 71 Ill. 2d 621.

### III.

The plaintiff's final contention is that portions of the testimony which are uncontradicted indicate that after Irena and John produced the note at the police department, they returned it to Guzell and that, following *Calvin Watson Motor Sales v. Devaull* (1964), 51 Ill. App. 2d 125, 201 N.E.2d 1, by this act they were estopped to deny consideration. Plaintiff's contention as to the facts is not supported by the record. Irena expressly denied returning it to him.

But even assuming Irena and John had returned the note to plaintiff, *Watson* would still not be in point. In *Watson*, the defendant originally gave plaintiff a note. Later he gave plaintiff a check for the same amount and plaintiff surrendered the note which was destroyed. The defendant thereafter stopped payment on the check, contending the note had not been supported by good consideration, a fact which the defendant had been aware of when he gave the check to the plaintiff. The court, applying the well-established rule that when a new note is given in exchange for a note that has matured the maker waives the defense of failure of consideration if such failure is known to the maker at that time, held that the note was discharged when the payee returned it to the maker in return for the check and, since it was discharged, all known defenses, including absence of consideration, were waived. The only issue was whether the check, not the note, was supported by good consideration. In the present case, on the other hand, even accepting plaintiff's version of the facts, there was only one note which was never discharged.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

JOHNSON and JIGANTI, JJ., concur.