**Archie STEIN, d/b/a Archie's Grill, Plaintiff-Appellee,**

v.

**GIRARD INSURANCE COMPANY OF PHILADELPHIA, PA., and Citizens Insurance Company, Defendants-Appellants.**

**No. 12350.**

United States Court of Appeals Seventh Circuit.

Oct. 24, 1958.

A. M. Anderson, Chicago, Ill., C. F. Snerly, Chicago, Ill., for appellant.

Maxfield Weisbrod, Chicago, Ill., for appellee.

Before FINNEGAN, SCHNACKENBERG and PARKINSON, Circuit Judges.

PARKINSON, Circuit Judge.

Shortly after midnight of Saturday, December 11, 1954, after having been closed for the weekend at 3:00 o'clock that afternoon, plaintiff's restaurant in the lobby of the Railway Exchange Building in Chicago was damaged by a fire of incendiary origin.

At the time of the fire plaintiff had two fire and extended coverage policies issued by the defendant companies under which the plaintiff made claim for the loss. The defendants denied liability and plaintiff sued. The defendants asserted by their answer, inter alia, the defense that the fire was caused by the plaintiff or through his procurement for the fraudulent purpose of collecting from the defendants on the insurance policies in suit.

Trial was to a jury. At the conclusion of all the evidence the District Court, on motion of the plaintiff, struck from the answer the willful destruction defense and withdrew that issue from the jury by giving the following instruction:

"You are instructed that the question as to the cause and origin of the fire in question is removed from your consideration, so that the jury in considering this cause shall give no consideration whatsoever as to the cause and manner or origin of the fire in question."

The jury returned a verdict for the plaintiff in the sum of $9,859.83. The District Court augmented the verdict with interest in the sum of $1,405.13 and entered judgment for $11,264.96. This appeal followed.

The facts established by the uncontradicted evidence are that the plaintiff owned and operated the restaurant, the contents of which were insured by the defendants, under the name of Archie's Grill. The front entrance of the restaurant was on Jackson Boulevard and there was a rear door which opened into a corridor leading to the main lobby of the Railway Exchange Building.

There were only *two* keys to the front door. The plaintiff had one and Edward Slapa, the cook, had the other. At 3:00 o'clock in the afternoon of December 11, 1954, Slapa closed the restaurant for the weekend after locking both doors. There was no one in the restaurant at that time.

Between five and six o'clock that afternoon James Fee came on duty as a watchman for the Railway Exchange Building and found the restaurant closed and locked. At 7:30 P.M. he locked the front door of the Railway Exchange Building on Jackson Boulevard. The rear loading platform had been previously locked. Thus the only entrance to the building after 7:30 P.M. that day was the Michigan Avenue entrance and no one could enter the building and have access to the rear door of plaintiff's restaurant without being seen by the watchman on duty in the lobby. Fee was on duty until midnight when another watchman, William C. Bok, relieved him.

Fee left the lobby to go home about 12:15 A.M. He proceeded to check all the outside doors of the business establishments in the building and as he approached the front door of plaintiff's restaurant he noticed a key in the lock. There were no lights on in the restaurant. He then saw a man open the front door, from the inside of the restaurant, come out, close the door, turn the key quickly in the door and walk east on Jackson Boulevard. He did not think it was the plaintiff and could not identify the plaintiff in the courtroom as that man.

At about this same time Bok, the other watchman, was checking all the rear doors in the lobby corridor. In so doing he smelled gasoline and when he got to the back door of plaintiff's restaurant the gasoline fumes were coming from underneath the door and the gasoline odor was so strong "it pretty near choked" him.

Bok went back to his seat in the lobby and in less than five minutes there were five or six loud explosions. The glass front of plaintiff's restaurant on Jackson Boulevard was blown out as was also the transom over the back door.

The following morning an Illinois Deputy Fire Marshal and an investigator for the National Board of Fire Underwriters found liquid gasoline mixed with water in the saucers stacked in plaintiff's restaurant.

The fire was of incendiary origin. The evidence so shows and counsel for plaintiff so admitted in oral argument before this court. Somebody intentionally started this fire and whoever it was had a key to the front door of the restaurant. Only two persons had such a key, the plaintiff and Slapa. The undisputed evidence was that Slapa had his key with him at all times and that he had nothing to do with causing the fire. No one contended or even suggested that Slapa was responsible in any manner for the fire. Plaintiff was the only other person who had such a key. This fact together with plaintiff's testimony that no one other than he would have "been benefited financially by a fire or from the proceeds of the insurance" and further buttressed by the fact that plaintiff failed to testify or offer any evidence as to his whereabouts or to account for his key furnished ample evidence from which a reasonable inference could be drawn that the plaintiff procured someone to set the fire and furnished his key to that person to gain entrance to the restaurant.

There is apparently no disagreement between the parties as to the law. If the plaintiff caused the fire to collect the insurance he cannot recover. The burden was on the defendants to so prove, not beyond a reasonable doubt but rather by a preponderance of the evidence. Sundquist v. Hardware Mutual Ins. Co., 1939, 371 Ill. 360, 21 N.E.2d 297, 124 A.L.R. 1375.

We have carefully read and considered all of the evidence in this record. The fire having been of incendiary origin there are two reasonable inferences to be drawn from the evidence. One that the plaintiff caused the fire to fraudulently collect the insurance and the other that he did not. It was within the exclusive province of the jury to make that determination. Under the evidence in this record it was a factual question and not a question of law. In short it was a question for the jury and the trial court was clearly in error in withdrawing that issue from the jury.

We have considered the other questions raised and argued but as they may not be present upon another trial we purposely do not discuss them here.

Judgment reversed and cause remanded for a new trial after restoration of the stricken portions of the answer by denying the plaintiff's motion to strike.