**ESQUIRE RESTAURANT, INC., an Illinois corporation, Plaintiff-Appellant,**

v.

**The COMMONWEALTH INSURANCE COMPANY OF NEW YORK, Cream City Mutual Insurance Company, Hartford Fire Insurance Company, Newark Insurance Company, and United States Fidelity and Guaranty Company, Defendants-Appellees.**

No. 15874.

United States Court of Appeals
Seventh Circuit.

March 11, 1968.

Rehearing Denied April 16, 1968.

John D. Vosnos, Bruce Parkhill, Chicago, Ill., for appellant.

Samuel Levin, Daniel J. Leahy, Chicago, Ill., for appellees.

Before KNOCH, Senior Circuit Judge, and FAIRCHILD and CUMMINGS, Circuit Judges.

CUMMINGS, Circuit Judge.

Plaintiff Esquire Restaurant, Inc., an Illinois corporation, is the lessee of part of the building at 12 South Grove Avenue, Elgin, Illinois. In 1962, it filed a suit in the Superior Court of Cook County, Illinois, to recover for losses allegedly covered by five fire insurance policies. Pursuant to Section 1441 of the Judicial Code (28 U.S.C. § 1441), the suit was removed by defendant insurers to the United States District Court.

About 4:45 a. m. on October 16, 1961, a fire occurred in the restaurant, damaging the contents, improvements and betterments. The complaint alleged that the sound value of the insured property at the time of loss was about $114,000, and that plaintiff's loss was about $84,-000.

At the time of the fire, Phil Anaston had been succeeded as president of the restaurant corporation by his son Louis Manolis. Anaston and his wife then owned all the corporation's outstanding stock. Ten weeks before the fire, Charles Seidel and his wife sold their stock in the restaurant to the corporation, which had lost considerable money for the years 1957 through 1961. The Seidels' 250 shares were acquired by the issuance of the restaurant's promissory note for $28,400, secured by a chattel mortgage on all its assets, and were to be retained as treasury shares upon their transfer.

After the fire, the Elgin Fire Department found two 5-gallon fuel oil cans and various pots and pans containing fuel oil in the restaurant. Its deputy chief testified that in his opinion the fire was deliberately set.

The testimony showed that the front door of the restaurant was locked but the rear door was ajar after the fire. The rear door had been locked with a padlock and hasp on the inside of the basement, but after the fire was extinguished, the padlock was found hanging on the hasp in an open position. The rear door and padlock had not been forced open.

At 2:30 a. m. on the morning of the fire, Louis Manolis, son of the owner, inspected and locked all the restaurant doors. He and his brother, Leo, and their father, Phil Anaston, had three sets of keys to the restaurant, and the fourth set was usually kept hanging in the back room of the restaurant. This fourth set was being used by Leo Manolis at the time of the fire because he had

lost his own set, which he found afterwards in his raincoat pocket.

In their answer, as amended, the defendants set out the following affirmative defenses:

    1. Neglect of the insured to use all reasonable means to save the property.

    2. False swearing in the proofs of loss that the origin of the fire was unknown, whereas it was known to be incendiary.

    3. False swearing in the proofs of loss concerning the cash value of the property and damage thereto.

    4. False testimony that the origin of the fire and those who caused it were unknown.

    5. False testimony concerning the extent of damage.

    6. Lessors' (rather than plaintiff's) ownership of improvements and betterments.

Overstatements in the proofs of loss and arson were the principal trial defenses.

After a 12-day trial, a general verdict was returned in defendants' favor and judgment was entered thereon. Plaintiff's motion for a new trial was denied after a hearing.

■ On appeal, plaintiff first attacks four instructions (O, Z, DD and GG).[1] Plaintiff's principal attack is on Instruction O, which was derived from Claflin v. Commonwealth Insurance Company, 110 U.S. 81, 95, 3 S.Ct. 507, 28 L.Ed. 76; and Tenore v. American and Foreign Insurance Co. of New York, 256 F.2d 791, 794–795 (7th Cir. 1958), certiorari denied, 358 U.S. 880, 79 S.Ct. 119, 3 L.Ed. 2d 110, and provided:

"The Court instructs the jury as a matter of law that a false answer to any material fact, knowingly and wilfully made, with intent to deceive the insurers, would be fraudulent. And if the matter were material and the statement false to the knowledge of the party making it and wilfully made, the intention to deceive the insurers would be necessarily implied, for the law presumes every man to intend the natural consequences of his acts."

■ Plaintiff argues that this instruction does not specifically refer to the proofs of loss,[2] but the instruction refers to false answers made with intent to deceive the insurers. As revealed by the closing statement of defendants' counsel, the only false statements relied upon were in the proofs of loss, and plaintiff points to no other statements in evidence to which the instruction might refer. The jury itself understood what the instruction was aimed at, for after deliberating, the jury asked the court whether overstatements "in the sworn proof of loss" would render it fraudulent. In response, the court reread Instruction O, stating that it answered the jury's question. Therefore, the omission of a specific reference to the proofs of loss in Instruction O was not prejudicial.

■■ Plaintiff also asserts that Instruction O was inadequate, on the ground that fraud in a proof of loss must be established by "clear and convincing evidence." On the contrary, Sundquist v. Hardware Mutual Fire Insurance Company of Minnesota, 371 Ill. 360, 365, 21 N.E.2d 297, 300 (1939),[3] establishes that false swearing in a proof of loss may be proved by a preponderance of the evidence, as explained by Instruction Z.[4]

1. There were no objections to Instructions H and FF. In accordance with Rule 51 of the Federal Rules of Civil Procedure, we will not consider any errors now assigned with respect to the giving of those instructions.

2. Even plaintiff's principal brief states at one point that Instruction O "related to this [false proof of loss] defense" (p. 16).

3. The *Sundquist* case was followed by this Court in Stein v. Girard Insurance Company of Philadelphia, Pa., 259 F.2d 764, 766 (7th Cir. 1958).

4. Instruction Z provided:
    "The Court instructs the jury that if you believe from a preponderance of the evidence that PHIL ANASTON wilfully and knowingly, with intent to deceive the defendants, committed fraud

Taken together, Instruction O and those in note 4 supplied the jury with the proper rule.

■■ Plaintiff finally contends that Instruction O improperly failed to define a material fact. However, the proof of loss statements about the cause of the fire and the value of the property and the amount of damage thereto, relied upon by defendants as false, were so clearly material that the jury did not need a separate definition of "material fact" in order to follow Instruction O. The jury's question to the court concerning the proofs of loss shows that it was not puzzled by any failure to define a material fact. Its sole concern was whether the whole of each proof of loss was fraudulent if some items therein were overstated. Since the purportedly false statements were patently material, plaintiff was undeservedly benefited by letting the jury consider materiality. Its material fact definition argument is therefore without merit in contrast to Laughlin v. Hopkinson, 292 Ill. 80, 85, 126 N.E. 591 (1920) and Williams v. Stearns, 256 Ill.App. 425, 433 (1930), where the juries' decisions on the materiality of allegations might have hurt those defendants.

■ Instruction GG is claimed to be erroneous. It provides:

"The Court instructs the jury that if you find from a preponderance of the evidence that it was agreed that the stock held by Charles G. Seidel and his wife in the Esquire Restaurant, Inc. be transferred to the corporation in consideration for the execution by Esquire Restaurant, Inc. of a chattel mortgage on the property of Esquire Restaurant, Inc., then and in that event the delivery of the certificates of said stock was not essential to the transfer of said stock to the corporation."

Because of plaintiff's Instruction 5, advising the jury that plaintiff could recover even if one of its officers set the fire unless he was the sole owner, it became important for the jury to determine who were the actual stockholders on the date of the fire. Instruction GG was appropriate for this purpose. Nothing in the instruction was calculated to raise a question in the jury's mind as to whether the plaintiff had an insurable interest in the mortgaged property, nor was such an objection raised at the conference on the instructions.

■ Assuming that plaintiff properly objected to Instruction DD [5] by merely stating, "I don't know what it adds to the case," the instruction was necessary in view of the affirmative defense that the improvements and betterments were owned by lessors Marie B. Dowle and her brother, Waldo J. Bielenberg. Under the policies, the plaintiff was not entitled to recover for the improvements and betterments unless it owned them. In order to determine the ownership of such property, the jury needed the definition provided in Instruction DD.

Plaintiff next asserts that the defendants were erroneously permitted to amend their answer. This amendment,

and false swearing within the meaning of the policies of insurance sued upon, then you should find for the defendants."
Another given instruction, submitted by plaintiff, provided:
"Defendants have the burden of proving by the greater weight or preponderance of the evidence, the affirmative defenses pleaded in their answer."
This instruction also told the jury that false swearing, one of the affirmative defenses, had to be proved by a preponderance of the evidence.

5. Instruction DD provides:
"The Court instructs the jury that in and by the conditions of the policies of insurance sued upon, it is provided among things that:
" 'The term "Improvements and Betterments" wherever used in this policy is defined as fixtures, alterations, installations, or additions comprising a part of the described building and made at the expense of the Insured, but which are not legally subject to removal by the Insured.' "

constituting Count II of the answer, alleged that under the lease of the premises, the improvements and betterments became the property of the lessors.

On November 17, 1965, during the course of the trial, the defendants first filed a motion for leave to amend their answer in this respect. At that time, the motion was denied after plaintiff's counsel objected to its coming "much too late." The motion was renewed on November 22 at the start of the instructions conference. There being no objection, the District Court allowed the motion at that time. Under Rule 46 of the Federal Rules of Civil Procedure, any error in permitting the amendment was perhaps technically waived. Nevertheless, since plaintiff originally objected to the amendment to the answer, we will consider the point.

■ Rule 15(b) of the Federal Rules of Civil Procedure gives the trial court wide discretion to allow pleadings to be amended to conform to the evidence. Here the original answer had admitted that plaintiff was the owner of the improvements and betterments in the restaurant. At the trial, the plaintiff introduced in evidence a lease between it and the building owners. The terms of that lease, which expired on August 1, 1960, provided that all improvements placed on the property should be the lessors' property and remain upon the premises after termination of the lease.

■ Because this lease persuaded the defendants that only the lessors were properly entitled to be recompensed for the improvements and betterments, it became necessary for them to amend their answer in this respect. There was nothing unfair in allowing the amendment, for afterwards, Phil Anaston, the ex-president of the restaurant and the owner of its outstanding stock, was called to testify again as a rebuttal witness and had an opportunity to rebut the facts stated in the amendment but did not choose to do so.

Plaintiff has cited three authorities to show that the allowance of the amend-ment was improper. Two of the authorities, Johnston v. Ouachita National Bank of Monroe, La., 40 F.2d 604 (8th Cir. 1930), and Ritchie v. McMullen, 79 F. 522 (6th Cir. 1897), certiorari denied, 168 U.S. 710, 18 S.Ct. 945, 42 L.Ed. 1212, antedate the promulgation of the Federal Rules of Civil Procedure and are not directly in point. Both acknowledge that a trial court has latitude in such matters. In the third, Cooper v. American Employers' Insurance Co., 296 F.2d 303 (6th Cir. 1961), the District Court's judgment was vacated for failure to permit the filing of an amended answer. Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222, and Lomartira v. American Automobile Insurance Co., 245 F.Supp. 124, 127–130 (D.Conn.1965) and cases collected in 3 Moore's Federal Practice (2d ed.) §§ 15.08, 15.13[2], also support defendants' view that the granting of leave to amend was well within the District Court's discretion.

To explain its theory of the arson, plaintiff was permitted to show past union hostility and that on August 27, 1960, some one broke in the back door of the restaurant and left two fuel cans of gasoline. Louis Manolis testified as to the 1960 arson attempt. He was not asked what he said to the police when he accompanied them to the restaurant at 11:30 p. m. during the night of the break-in. However, the District Court stated that it would permit Manolis to testify that he told the police the following upon arrival at the restaurant on the night of August 27, 1960:

"Do you think those fellows from the union attempted to burn us out?"

Instead of seeking to elicit this testimony through Louis Manolis, as directed by the Court, plaintiff's counsel attempted to elicit it only through three members of the Elgin Police Department who were at the restaurant at the time of the first arson attempt.

■ One of the reasons that the District Court refused plaintiff's offers of proof in this respect was its conclusion that hearsay should not be received

when Louis Manolis was present in court and could have testified himself. Even apart from the hearsay rule, it is well settled that self-serving statements of this nature are inadmissible in evidence. Throckmorton v. St. Louis-San Francisco Ry. Co., 179 F.2d 165, 167–168 (8th Cir. 1950), certiorari denied, 339 U.S. 944, 70 S.Ct. 797, 94 L.Ed. 1359; Richardson v. Walsh Construction Co., 334 F.2d 334, 338–339 (3rd Cir. 1964); Steiner v. Rig-A-Jig Toy Co., 10 Ill.App.2d 410, 421–422, 135 N.E.2d 166, 171 (1956); Vujovich v. Chicago Transit Authority, 6 Ill.App.2d 115, 120, 126 N.E.2d 731, 734 (1955). The District Court's refusal of plaintiff's offers of proof was proper.

■■■ Plaintiff next argues that certain exhibits should not have been admitted. First, the plaintiff states that the 1948 chattel mortgage given by Phil Anaston to the Efstonbuilt contracting firm was erroneously received. Since plaintiff's counsel stated that he had no objection to the mortgage, plaintiff cannot now assign error with respect to its admission. Rule 46 of the Federal Rules of Civil Procedure.

Plaintiff's principal brief also attacks the admission into evidence of a 1949 chattel mortgage given to a Mr. Thanos, but the transcript reveals that the trial judge sustained plaintiff's objection to this exhibit and that it was not admitted.

■■■ The third mortgage of which plaintiff complains is the 1963 chattel mortgage from the restaurant to Charles Seidel. This mortgage was relevant to show the consideration given to Seidel by the restaurant for the sale of his stock to the corporation. Because of plaintiff's Instruction 5 (supra, p. 115), it was essential for defendants to show that Seidel and his wife did not own any stock at the time of the fire, so that it was not reversible error to receive the 1963 chattel mortgage which replaced a 1961 mortgage released by Seidel.

■■■ Although plaintiff's brief deplores the receipt of evidence regarding its economic and financial history, much of that evidence was put in by the plaintiff. Certainly the introduction into evidence of plaintiff's income tax returns and accountant Roy's testimony were properly admitted to show the poor financial condition of this business prior to the fire, a possible motive for the arson that occurred in October 1961. Stein v. Girard Insurance Co. of Philadelphia, Pa., 259 F.2d 764, 766 (7th Cir. 1958); McIntosh v. Eagle Fire Company of New York, 325 F.2d 99, 100 (8th Cir. 1963). Since the policies in question insured "the actual cash value of the property at the time of loss," plaintiff argues that it was improper to accept any depreciation testimony. In Knuppel v. American Insurance Co., 269 F.2d 163, 165–166 (7th Cir. 1959), we held that under Illinois law "actual cash value," as used in indemnity clauses of fire insurance policies, means reproduction value less depreciation for age. Under that holding, to which we adhere, the depreciation evidence was admissible. This accords with Instructions D and E, both of which refer to depreciation; their correctness is not disputed in plaintiff's briefs.

■■■ Likewise, the District Court correctly received the testimony of insurance adjuster Justice and Messrs. Sinnett and Kidwell of the Lamp Company, the firm that did the repair, remodeling and replacement work for the lessors and the restaurant, to support the defense that plaintiff had knowingly included in its proofs of loss various losses already reimbursed to the lessors by other insurance companies.

■■■ Plaintiff complains too that defendants should not have been permitted to show that Phil Anaston had transferred title to his home to his son, Louis Manolis. However, this was first elicited during Phil Anaston's direct examination by the plaintiff when he testified that the transfer was made because of his poor health. It was therefore permissible for defendants to cross-examine Seidel to show that the title had been transferred for another and less edifying reason.

Plaintiff also complains of the admissibility of any reference to a 1958 suit brought by the Seidels in the City Court of Elgin, Illinois, against this restaurant and Mr. and Mrs. Phil Anaston, with their son Louis Manolis later added as a party defendant. In the direct examination of Seidel by plaintiff, a picture was painted of a long history of untroubled business dealings between Seidel, a person of stature in the community, and Phil Anaston, obviously intended to cause the jury to react favorably to Anaston. Under the doctrine of curative admissibility, it was proper to permit defendants to show through reference to the Seidels' lawsuit that Seidel did not always regard Anaston favorably, Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503; California Insurance Co. v. Allen, 235 F.2d 178 (5th Cir. 1956); People v. Kalpak, 10 Ill.2d 411, 423–424, 140 N.E.2d 726 (1956); Franklin Fire Insurance Co. v. Coleman, 87 S.W.2d 537 (Tex.Civ.App. 1935); I Wigmore on Evidence (3rd ed.) § 15; McCormick on Evidence § 57. Moreover, any undue prejudice that might have resulted was alleviated by plaintiff's redirect examination establishing that Seidel dropped the suit and considers Anaston as a friend.

Plaintiff's final point is that the verdict was against the manifest weight of the evidence. As to the overstatements of items claimed in the proofs of loss, plaintiff only alleges that the evidence was inadmissible, but we have already ruled to the contrary.

As to the arson evidence, plaintiff admits that the fire was of incendiary origin. It attacks the circumstantial evidence of two of the dishwashers in the restaurant and of Miss Archambault, who lived three doors from the restaurant at the time of the fire. The two dishwashers testified that Phil Anaston was in the basement about 10 p. m. that night when Miss Archambault saw three men entering the rear of the restaurant with fuel oil cans. The credibility of these and other witnesses was of course necessarily for the jurors. They were also entitled to take into consideration that the four sets of keys to the premises were in the possession or control of Anaston and his two sons, that the business had been losing money, and that the restaurant needed the remodeling that was done after the fire. Cf. Stein v. Girard Insurance Co. of Philadelphia, Pa., 259 F.2d 764, 766 (7th Cir. 1958). Our examination of the record satisfies us that there was sufficient evidence of arson and false swearing to support the general verdict in favor of the defendants.

Affirmed.