**L & S ENTERPRISES COMPANY,**
Plaintiff-Appellee,

v.

**GREAT AMERICAN INSURANCE COMPANY and United States Fidelity and Guaranty Company, Defendants-Appellants.**

No. 18570.

United States Court of Appeals,
Seventh Circuit.

Dec. 2, 1971.

Dom J. Rizzi, Epton, McCarthy, Bohling & Druth, Chicago, Ill., for defendants-appellants; Bernard E. Epton, Edward McCarthy, James V. Creen, Chicago, Ill., of counsel.

George C. Rabens, Chicago, Ill., for plaintiff-appellee.

Before HASTINGS, Senior Circuit Judge, and KERNER and SPRECHER, Circuit Judges.

KERNER, Circuit Judge.

L & S Enterprises brought this diversity action in the district court to recover under an insurance policy issued by the defendants, for damage arising out of a fire of its business premises on February 13, 1967. After a jury trial, a verdict was returned in favor of the plaintiff, L & S. The defendants appeal.

The defendants sought to prove below that the owners of L & S caused the fire themselves, and argue on appeal that it was error for the district court to have stricken this arson defense and related testimony.

A representative of the Chicago Fire Department testified that when he arrived at the business premises on the night of the fire, he observed two streamers of fire on the floor in the center of the building extending to the rear, suggesting to him that fuel had been used to start the fire. He also smelled the odor of fuel at the time. After the fire was extinguished, there remained a charred pattern in this area of the floor. These facts led the fire fighter to determine that the cause of the fire was of a suspicious nature. No other information was gathered as to the incendiary nature of the fire. The Bureau of Fire Investigation of the Fire Department did conduct a limited investigation, but dropped it after a short period of time. An official of the Bureau testified that it was very possible that the fire was innocent in nature.

With respect to the evidence that the insured caused the fire, assuming its incendiary origin, the defendants attempted to show that the owners of L & S, who were the proprietors of the building, possessed a motive for arson. Emanuel Lipschutz and Neil Scarpelli formed L & S in 1965, along with another company, to engage in the slot car racing business. Both men testified that they were engaging in other work as a means of income and regarded L & S as a hobby. At the premises subsequently damaged by the fire, they built three slot car racing tables on which customers could race controlled miniature automobiles along slotted tracks. The business, which began in late 1966, had incurred a loss from 1966 through the date of the fire. Evidence also indicates a general decline in the slot car racing market at the time of the fire.

The defendants argue that the jury should have been permitted to find that Scarpelli and Lipschutz, faced with a growing loss in their business, had decided to set a fire to their business premises in order to collect the insurance proceeds for the damage. The defendants point out that the only persons with keys to the premises had been Scarpelli, Lipschutz and the manager of the business, who, according to the evidence, had been the last to leave the premises on the night of the fire, but did not have a motive to start a fire. Thus, the defendants assert, the evidence of the incendiary nature of the fire coupled with the proprietors' motive and their possession of keys were sufficient to take the arson defense to the jury. We disagree.

We are mindful of the fact that "[a]rson, by its very nature, is usually incapable of direct proof and the evidence is necessarily often of a negative nature," and that " * * * the opportunity for the commission of arson, the motive inducing arson, and the identity of the person accused of arson may all be established by circumstantial evidence." Commerce Union Bank v. Midland National Insurance Company, 53 Ill.App.2d 229, 239, 202 N.E.2d 688, 693 (1964). Nevertheless, we do not believe that the reasonable inferences which a

jury could draw from the circumstantial evidence in the case at bar would support a defense of arson.

We reach this conclusion for two reasons. First, there was little probative evidence at trial that the fire was incendiary. The only evidence suggesting arson was the smell of fuel and the charred pattern on the floor. While this led the Fire Department to report the circumstances of the fire to its arson squad, an investigation of the premises was dropped. This scant evidence indicated to the Fire Department that a case of arson could not be shown, and we agree. Second, there is nothing indicating that Scarpelli or Lipschutz caused the fire, even if incendiary. An agent of the Arson Fraud Bureau of the American Insurance Association testified that he did not find anything at all to tie Scarpelli or Lipschutz to any wrongdoing in connection with the fire. The economic instability of the business may be a factor evidencing arsonous intent, but the existence of that fact alone did not compel the court to allow the jury to consider that defense. Mavros v. St. Paul Fire and Marine Insurance Company, 296 F.2d 271 (7th Cir. 1961). That Scarpelli and Lipschutz possessed keys to the premises does not make the arson defense any less tenuous since they both accounted for their whereabouts on the night of the fire. Stein v. Girard Insurance Co. of Philadelphia, 259 F.2d 764, 766 (7th Cir. 1958).

The absence of additional facts connecting the insured with the alleged arson distinguishes this case from those cited to us by the defendants, Esquire Restaurant Inc. v. Commonwealth Ins. Co. of N. Y., 393 F.2d 111 (7th Cir. 1968), and Stein v. Girard Insurance Co. of Philadelphia, Pa. *supra*. In *Esquire Restaurant Inc.* the Fire Department had found two five gallon fuel oil cans on the premises. The Deputy Chief of the Department testified that he believed the fire was deliberately set; there was also evidence of a prior arson attempt. More important for purposes of analogy to this case, the owner, who possessed four sets of keys to the premises, was seen in the restaurant basement when three men entered the rear of the building with the fuel oil cans. It was on these facts that this court affirmed a jury finding of arson. By contrast, the instant case includes no evidence of the origin of the fire or of the insureds' presence at the scene prior to the fire.

*Stein* also involves more evidence substantiating an arson defense. There was no question that the fire in the restaurant in *Stein* was of an incendiary origin; this fact was admitted by both parties on oral argument. A watchman saw a man enter the locked restaurant with a key but did not identify him as the plaintiff, who was the owner of the restaurant. At this time, another watchman smelled the strong odor of gasoline fumes. An explosion followed. This court, in holding that there was a jury question as to whether the plaintiff started the fire, stated, 259 F.2d at 766:

> Somebody intentionally started this fire and whoever it was had a key to the front door of the restaurant. Only two persons had such a key, the plaintiff and Slapa. The undisputed evidence was that Slapa had his key with him at all times and that he had nothing to do with causing the fire. No one contended or even suggested that Slapa was responsible in any manner for the fire. Plaintiff was the only other person who had such a key. This fact together with plaintiff's testimony that no one other than he would have "been benefited financially by a fire or from the proceeds of the insurance" and further buttressed by the fact that plaintiff failed to testify or offer any evidence as to his whereabouts or to account for his key furnished ample evidence from which a reasonable inference could be drawn that the plaintiff procured someone to set the fire and furnished his key to that person to gain entrance to the restaurant.

In this case, the defendants have not presented evidence connecting the owners with the origin of the fire. There is

little here to prove that the fire was of an incendiary nature, and if so, who the arsonist was and how he came into possession of a key to the premises. Further, the proprietors did account for their whereabouts on the night of the fire, and no one was seen entering the premises prior to the fire.

■ For these reasons, we conclude that the judge was correct in striking the defense of arson and related testimony.

The appellants attack Instruction No. 12 which stated in part:

In these cases where the defendants seek to avoid liability on their policies * * * on the grounds of fraud or misrepresentation on the part of the plaintiffs, the duty rests upon the defendants to show by a preponderance of the evidence that such fraud * * * was relied upon by the defendants, and was the cause that moved them to make the adjustments pleaded, and unless this has been proved, the defendants cannot defeat a recovery of the plaintiffs on such grounds.

The appellants believe that a portion of this instruction incorrectly states that a prerequisite to the voiding of the policy was that they must have relied on the fraud of L & S. They point to a clause in the policy which provides that the policy " * * * shall be voided if, * * * the insured has wilfully * * * misrepresented any material fact or circumstance concerning this insurance. * * * " They note that reliance by the insurer on fraudulent misstatements by the insured does not have to be shown, and cite to this effect Tenore v. American & Foreign Ins. Co., 256 F.2d 791 (7th Cir. 1958), cert. denied 358 U.S. 880, 79 S.Ct. 119, 3 L.Ed. 2d 110 (1958).

The evidence, according to the defendants, suggests two instances of fraud. First, that the arson amounted to fraud. Second, that the plaintiff listed in the statement of loss items worth $900, destroyed by the fire, which were owned by a subsidiary and not the insured, L &

S; that statement listed total damage in the amount of $31,958.99. Since the arson defense was properly not before the jury because of the lack of evidence supporting it, the only evidence of fraud covered by the questioned instructions were the items worth $900.

■ The testimony concerning this point was that the $900 loss was sustained by the subsidiary, rather than L & S. We do not believe that this statement amounts to an intentional misrepresentation. The finding of this court in Tenore, supra, at 795, that the plaintiffs there " * * * knowingly and wilfully made false statements with regard to a material matter with an intent to defraud," was based on the fact that the plaintiffs grossly overvalued practically all of the items. The court conceded that if the plaintiffs had overvalued a smaller number of items, " * * * and had displayed some effort to make an honest valuation as to the other [items]," the result would have been different. Tenore at 794. In the case at bar, the apportionment of the subsidiary's loss to L & S was of a negligible amount in comparison with the amount of the total claim. This statement of fact does not prove wilful misrepresentation. Since we find that fraud could not have been proved, the erroneous instruction did " * * * not affect the substantial rights of the parties," and is therefore harmless. Rule 61, Fed.R.Civil P.

■ Finally, appellants attack an instruction dealing with the burden of proof to establish fraud. The appellants are correct in stating that fraud need only be proved by the preponderance of the evidence. Esquire Restaurant Inc. v. Commonwealth Ins. Co. of N. Y., supra, 393 F.2d at 114. Nevertheless, because we have found above the evidence insufficient to prove fraud, this instruction also constitutes harmless error. Rule 61, Fed.R.Civil P.

The judgment of the district court is affirmed.

Affirmed.